ALICIA ECHEVARRÍA JIMÉNEZ, demandante y recurrida, *v.* SUCESIÓN DE TEODORICO PÉREZ MERI, compuesta por RAYDA PÉREZ DE CABANILLAS y RAFAEL PÉREZ COLÓN, demandados y peticionarios.

*Número:* CE-87-814      *Resuelto:* 15 de mayo de 1989

*Gerardo Pavía*, de *Moreda & Moreda*, abogado de la peticionaria Rayda Pérez de Cabanillas; *José Juan Nazario De la Rosa*, de *Nazario, Santiago, De León*, abogado del peticionario Rafael Pérez Colón; *Milagros Acevedo Colón*, abogada de la recurrida.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El 21 de abril de 1988 consolidamos los recursos *Alicia Echevarría v. Sucesión Pérez Meri, et als.*, CE-87-814 y CE-88-150, que versan sobre incidentes procesales ocurridos en el mismo caso.

En el Recurso CE-87-814 comparece la codemandada Rayda Pérez de Cabanillas para cuestionar dos (2) resoluciones emitidas por el tribunal de instancia. En la primera, el tribunal decretó la anotación de aviso de demanda en el Registro de la Propiedad sobre una propiedad sita en la Calle Siracusa B-4 de la Urbanización Town Park en Río Piedras. Mediante la segunda resolución el tribunal ordenó, en relación con esta propiedad, la anotación de pleito pendiente en el Registro de la Propiedad.[1] En dicha resolución el tribunal, además, se negó a desestimar el caso.

En relación con este recurso, la codemandada Pérez de Cabanillas plantea la comisión de tres (3) errores que pueden resumirse de la manera siguiente: (1) que erró el tribunal de instancia al no desestimar la demanda; (2) que erró al permitir la anotación de aviso de demanda en el Registro de la Propiedad, y (3) que erró al no autorizar la venta de dicha propiedad.

En el Recurso CE-88-150 comparece el codemandado Rafael Pérez Colón y cuestiona una resolución que autorizó el emplazamiento mediante edictos y la publicación de éstos.[2] Además, cuestionó otra resolución mediante la cual se declaró sin lugar su moción para solicitar desestimación por falta de jurisdicción e inactividad por un período de seis (6) meses.

---

[1] El tribunal expresó lo siguiente: "Aviso de pleito pendiente grava la propiedad que se pretende vender." Apéndice, pág. 6.

[2] Esta resolución se dictó el 28 de octubre de 1987. Aunque el peticionario hace alusión en su recurso a una orden de 28 de septiembre de 1987 y acompaña fotocopia de la misma en el apéndice, de los autos originales surge que esta orden realmente se dictó el 28 de octubre de 1988.

En este recurso el codemandado Pérez Colón plantea la comisión de dos (2) errores que podemos sintetizar de la manera siguiente: (1) que erró el tribunal al no desestimar la demanda por inactividad, falta de diligencia y desinterés, y (2) que erró al ordenar un nuevo emplazamiento mediante edicto.

## I

*Los hechos procesales*

A continuación procedemos a detallar los hechos procesales pertinentes. El 3 de mayo de 1982 la Sra. Alicia Echevarría Jiménez presentó demanda sobre división de gananciales contra Teodorico Pérez Meri, representado por su tutora Rayda Pérez de Cabanillas. En dicha demanda se mencionó específicamente una propiedad sita en la Calle Siracusa B-4 de la Urbanización Town Park en Río Piedras. Luego de una serie de mociones de las partes y órdenes del tribunal, el 14 de mayo de 1982 se emplazó al demandado Pérez Meri y a su tutora, su hija, la señora Pérez de Cabanillas.

El 25 de octubre de ese mismo año se le informó al tribunal que el demandado Pérez Meri había fallecido el 19 de octubre.[3] El 13 de diciembre de 1982, una vez el tribunal aceptó la sustitución de parte, la representación legal de la codemandada Pérez de Cabanillas comenzó a comparecer a nombre de la *parte demandada*. Anteriormente las comparecencias las había hecho a nombre solamente de la codemandada Pérez de Cabanillas. En las Minutas de 13 de enero y de 17 de septiembre de 1984 se hizo constar que este mismo abogado compareció también a nombre de la *parte demandada*. Sin embargo, el 5 de marzo de 1985 el tribunal, motu

---

[3] La sucesión quedó compuesta por Rayda Pérez de Cabanillas y Rafael Pérez Colón, hijos del finado demandado.

proprio, ordenó el emplazamiento del codemandado Pérez Colón por considerar que éste no había comparecido ni había sido emplazado. La demandante estuvo de acuerdo con esta apreciación.

Desde la referida fecha hasta el 3 de abril de 1986, no consta gestión procesal alguna, ante lo cual el tribunal emitió una orden para mostrar causa al amparo de la Regla 39.2(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, por inactividad por un período de seis (6) meses. En contestación a la orden, la demandante indicó mediante moción que estaba en conversaciones de transacción y explicó los problemas confrontados. Dos (2) días después, el tribunal ordenó emplazar o informar si desistía de la demanda.

Nuevamente, el 7 de enero de 1987, el tribunal emitió orden para mostrar causa al amparo de la Regla 39.2(b), *supra*, por inactividad por más de seis (6) meses. El 20 de enero la parte demandante compareció para mostrar causa. El 26 de enero de 1987 el tribunal desestimó la demanda. El 29 de enero la demandante solicitó reconsideración y al otro día, el 30 de enero, el tribunal dejó sin efecto la sentencia y le concedió término para emplazar mediante edictos.[4]

El 20 de febrero de 1987 el tribunal ordenó a la parte demandante acreditar las gestiones realizadas para conseguir la dirección del codemandado Pérez Colón. El 25 de marzo la codemandada Pérez de Cabanillas presentó moción de desestimación fundamentada en el incumplimiento de dicha orden por la parte demandante. En la moción hizo referencia a todas las tardanzas habidas en la tramitación del caso. El 30 de marzo el tribunal ordenó mostrar causa por la cual no debía reinstalar la sentencia desestimatoria dictada el 26 de enero de 1987 e impuso al abogado de la demandante

---

[4] Cabe señalar que el abogado de la codemandada Pérez de Cabanillas falleció, por lo que se presentaron una serie de mociones durante el período comprendido entre el 19 de junio de 1986 al 7 de enero de 1987.

una sanción de $200. El 9 de abril la parte demandante compareció a mostrar causa, consignó la sanción impuesta, informó sobre la dirección del codemandado Pérez Colón, solicitó la anulación de la autorización de la codemandada Pérez de Cabanillas para actuar como administradora de la propiedad involucrada en el litigio y solicitó permiso para enmendar la demanda y añadir una causa de acción por daños y perjuicios.

Cuatro (4) días más tarde, la codemandada Pérez de Cabanillas presentó una segunda moción de desestimación. El 28 de abril de 1987 se opuso a la moción para mostrar causa de la demandante, a la solicitud de permiso para enmendar la demanda y, por último, a que se anulase su autorización para administrar la propiedad. El 23 de abril de ese mismo año el tribunal autorizó la demanda enmendada y el emplazamiento mediante edicto; además, declaró sin lugar la moción de desestimación de la codemandada Pérez de Cabanillas.

El 8 de junio de 1987 se celebró una conferencia sobre el estado del caso, a la cual no compareció la representación legal de la parte demandante. El tribunal impuso a dicho abogado una sanción de $150 y ordenó a la parte demandante mostrar causa por la cual no debía archivar el pleito. El 8 de junio la codemandada Pérez de Cabanillas contestó la demanda enmendada y el 23 de junio la demandante compareció para mostrar causa.

Luego de una serie de mociones relacionadas con la propiedad involucrada en el litigio y el emplazamiento del codemandado Pérez Colón, el 14 de agosto de 1987 el tribunal nuevamente emitió una orden para mostrar causa por la cual el caso no debía ser archivado por inacción. En esta ocasión, por primera vez, la orden para mostrar causa se notificó tanto a la demandante como a su representación legal. El 21 de agosto de 1987 la demandante, señora Echevarría Jiménez, compareció por derecho propio e informó al tribunal que no estaba satisfecha con la labor realizada por su abogado,

que entendía que éste no había cumplido con sus responsabilidades en el caso, que esto motivó que el tribunal tuviera que imponerle sanciones económicas en dos (2) ocasiones y que en vista de todo lo anterior ella le pidió la renuncia. En dicha moción solicitó un término para obtener nueva representación legal. El 31 de agosto el tribunal la concedió. El 16 de septiembre la nueva representación legal presentó una moción relacionada con las gestiones realizadas para emplazar al codemandado Pérez Colón Meri.

El 2 de octubre de 1987, mediante comparecencia especial, el codemandado Pérez Colón solicitó que se dejara sin efecto el emplazamiento mediante edicto por insuficiencia en el diligenciamiento. El 20 de octubre la demandante presentó una moción relacionada con un nuevo emplazamiento y solicitó la anotación de aviso de demanda en el Registro de la Propiedad. El 28 de octubre el tribunal autorizó el emplazamiento y la anotación de aviso de demanda. El 6 de noviembre, en relación con el permiso para vender la propiedad objeto del litigio, el tribunal emitió una resolución mediante la cual indicó, simplemente, que sobre ésta se había anotado aviso de demanda pendiente en el Registro de la Propiedad. El 15 de diciembre de 1987 la demandante contestó la reconvención de la codemandada Pérez de Cabanillas. El 28 de enero de 1988 el codemandado Pérez Colón presentó moción para solicitar la desestimación del caso por falta de jurisdicción e inactividad por un período de más de seis (6) meses. El tribunal la denegó el 11 de febrero de 1988.

II

*Desestimación por inactividad—Regla 39.2(b) de Procedimiento Civil*

Por versar esencialmente sobre lo mismo, discutiremos conjuntamente el tercer error planteado en el Recurso CE-87-814 y el segundo error del Recurso CE-88-150, que

cuestionan la negativa del tribunal de instancia a desestimar la demanda por inactividad, por falta de diligencia y por desinterés.

■ A pesar de la azarosa trayectoria procesal de este caso, luego de hacer un balance racional y justiciero de la totalidad de los autos originales, concluimos que no debemos intervenir con la discreción del tribunal de instancia al denegar las mociones de desestimación.

Aunque de una primera lectura de los autos originales podría pensarse que el tribunal a quo fue demasiado flexible en su determinación de denegar las mociones de desestimación, un análisis más ponderado demuestra que a pesar de las tardanzas de la parte demandante ésta mostró en todo momento gran interés en la dilucidación del caso. También refleja dicho expediente que la demandante recurrida, señora Echevarría Jiménez, sólo fue notificada de la orden para mostrar causa del tribunal dictada el 14 de agosto de 1987. En esta ocasión se le notificó a través de su representante legal y directamente a ella a su residencia. Entonces la demandante recurrida, con diligencia e inmediatamente después de enterarse de las actuaciones de su abogado, compareció al tribunal por derecho propio e informó que había pedido la renuncia de éste y que estaba en trámites de obtener una nueva representación legal.

■ Existe una política judicial de que los casos se ventilen en sus méritos. Ya, desde *Ramírez de Arellano v. Srio. de Hacienda*, 85 D.P.R. 823, 829 (1962), señalamos que la desestimación de un caso sin ir a los méritos, como un medio de sanción, debe ser de los últimos recursos a utilizarse. Véanse, además: *Acevedo v. Compañía Telefónica de P.R.*, 102 D.P.R. 787, 791 (1974); *Arce v. Club Gallístico de San Juan*, 105 D.P.R. 305 (1976); *Garriga Gordils v. Maldonado Colón*, 109 D.P.R. 817, 822–823 (1980).

■ En *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494, 498 (1982), se señaló:

Planteada ante un tribunal una situación que, de acuerdo con la ley y la jurisprudencia aplicables, amerita la imposición de sanciones, *éste debe, en primer término, imponer las mismas al abogado de la parte. Si dicha acción disciplinaria no produce frutos positivos, procederá la imposición de la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones, tan s[ó]lo después que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida.* La experiencia señala que en la gran mayoría de los casos que presentan esta clase de dificultades —el presente caso es un ejemplo de ello— *las partes no están enteradas de la actuación negligente de sus abogados y, al advenir en conocimiento de ello, la situación es corregida de inmediato.* Una parte que haya sido informada y apercibida de esta clase de situación y no tome acción correctiva, nunca se podrá querellar, ante ningún foro, de que se le despojó injustificadamente de su causa de acción y/o defensas. (Énfasis suplido y escolio omitido.)

Reiteramos estos principios en *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807, 814 (1986).

■ Aunque la Regla 39.2(b) de Procedimiento Civil, *supra*, no exige que se notifique la orden para mostrar causa a la parte propiamente (por ser ésta una regla de naturaleza punitiva en relación con el manejo del caso por parte de la representación legal de la parte promovente) el hecho de la falta de conocimiento de la parte debe tomarse en cuenta al evaluar las razones ofrecidas para justificar la inactividad por seis (6) meses. Este es un factor a considerar al "balancear los intereses envueltos: de un lado, la necesidad del tribunal de supervisar su calendario, el interés público en la resolución expedita de los casos y el riesgo de p[er]juicio al demandado por la dilación; por otro lado está la política judicial de que los casos se ventilen en los méritos, por lo que ...

de no demostrarse p[er]juicio verdadero con la dilación es irrazonable ordenar el archivo". J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1985, Vol. II, Cap. VI, pág. 206.

Examinada la totalidad de las circunstancias procesales, concluimos que no estamos ante un "caso extremo" de abandono a los que alude la jurisprudencia para imponer la drástica medida de privar al litigante de su día en corte. Máxime si tomamos en consideración que, a menos que el tribunal en su orden de desestimación disponga lo contrario, una desestimación por inactividad bajo la Regla 39.2(b) de Procedimiento Civil, *supra*, tiene el efecto de una adjudicación en los méritos. Después de todo, "[t]odo proceso adjudicativo se orienta en hallar la verdad y hacer justicia". *Berríos v. U.P.R.*, 116 D.P.R. 88, 94 (1985).

Los señalamientos de error Núm. 3 del Recurso CE-87-814 y Núm. 2 del Recurso CE-88-150 no se cometieron.

### III

*Anotación preventiva de demanda —"Documento Bastante"— Art. 113 de la Ley Hipotecaria y del Registro de la Propiedad*

Procedemos a discutir el primer señalamiento de error del Recurso CE-87-814 que versa sobre la autorización de la anotación preventiva de la demanda en el Registro de la Propiedad.

La anotación preventiva de demanda en el Registro de la Propiedad se rige por lo dispuesto en los Arts. 112 y 113 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria), Ley Núm. 198 de 8 de agosto de 1979, según enmendada, 30 L.P.R.A. secs. 2401 y 2402. *Rocafort v. Álvarez*, 112 D.P.R. 563, 573 (1982); *E.R. Foods, Inc. v. Lee Optical*, 117 D.P.R. 566, 570 (1986).

El Art. 112 de la Ley Hipotecaria, *supra*, en su parte pertinente, lee como sigue:

Podrán pedir anotación preventiva de sus respectivos derechos en el Registro:

1ro. El que reclamare en juicio la propiedad de bienes inmuebles o la constitución, declaración, modificación o extinción de cualquier derecho registrable o el que reclamare en alguna acción que afecte al título de propiedad inmueble, o sobre la validez y eficacia, o invalidez o ineficacia, del título o títulos referentes a la adquisición, constitución, declaración, modificación o extinción de los precitados derechos registrables.

El Art. 115.1 del Reglamento para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad (Reglamento Hipotecario) dispone:

Quien entablare alguna reclamación comprendida en el número uno del artículo 112 de la Ley [30 L.P.R.A. sec. 2401, inciso 1ro.], podrá solicitar del tribunal, conjuntamente con la radicación de su demanda, o posteriormente, que se ordene la anotación preventiva de su demanda sobre el bien inmueble afectado. 30 L.P.R.A. sec. 2003–115.1, edición especial.

De otra parte, el Art. 113 de la Ley Hipotecaria, *supra*, expresa:

En el caso del número uno [del Art. 112] anterior, no podrá hacerse la anotación preventiva sino cuando se ordene por providencia judicial dictada a instancia de parte legítima y *en virtud de documento bastante al prudente arbitrio del juzgador*, excepto cuando la acción tenga un derecho real inscrito como base para su ejercicio, en cuyo caso será suficiente para su anotación en el Registro la presentación de copia certificada de la demanda. (Énfasis suplido.)

El Art. 115.4 del Reglamento Hipotecario, a su vez, establece:

Se exime del requisito de presentación de mandamiento judicial en el caso en que la acción interpuesta tenga como base para su ejercicio un derecho real inscrito.

En este caso será suficiente para su anotación en el Registro la presentación de copia certificada de la demanda radicada, en la cual deberá indentificarse con claridad el derecho real inscrito sobre el cual basa su acción y la descripción de la finca afectada. 30 L.P.R.A. sec. 2003–115.4, edición especial.

En el presente caso la demandante presentó una moción para solicitar anotación de demanda en el Registro de la Propiedad,(5) con la cual no acompañó documento alguno.

Alegó en dicha moción lo siguiente: que se casó con el causante, Don Teodorico Pérez Meri, en 1955; que durante el tiempo en que estuvieron casados adquirieron bienes, entre los cuales se encuentra la propiedad sobre la cual se pide anotación preventiva; que aún no se ha hecho una división de gananciales; que durante el matrimonio Don Teodorico realizó transacciones con bienes inmuebles "como si no estuviera casado y en forma privativa, habiéndose realizado transacciones en el Registro de la Propiedad compareciendo él solamente" (*exhibit* XIX, pág. 24), y que tenía evidencia para probar su participación en dichos bienes.

A base de esta moción, el tribunal decretó la anotación de aviso de demanda sobre la propiedad sita en la Calle Siracusa B-4 de la Urbanización Town Park en Río Piedras. En consecuencia, se expidió un mandamiento sobre anotación de aviso de demanda dirigido al Registrador de la Quinta Sección de San Juan.

---

(5) En los autos originales aparece también como presentado ante el tribunal de instancia por la demandante un escrito titulado "Anotación de Aviso de Demanda", dirigido al Registrador de la Propiedad, Sección Quinta, San Juan. Con este escrito acompañó una copia certificada de la demanda enmendada.

No estamos pasando juicio, por no estar planteado en este caso, sobre si bajo las circunstancias específicas del mismo procedería la anotación preventiva de la demanda bajo la excepción que establece el Art. 113 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria), 30 L.P.R.A. sec. 2402, es decir, la anotación sin intervención judicial si la acción tiene un derecho real inscrito como fundamento para su ejercicio.

■ La anotación preventiva de demanda es un asiento provisional que asegura transitoriamente ciertos derechos; "es una advertencia a los posibles adquirentes de los bienes anotados. Su efecto consiste 'en asegurar un rango al derecho real que como consecuencia del litigio pueda constituirse, asegurando la retroactividad del mismo al momento de la anotación de la demanda frente a los terceros que hayan inscrito en el intermedio algún derecho' (Cossío). En principio, carece de los demás efectos, defensivos y ofensivos, de una inscripción". J.L. Lacruz Berdejo y F.A. Sancho Rebullida, *Derecho Inmobiliario Registral*, Barcelona, Librería Bosch, 1977, pág. 269.

■ El Art. 112(1ro) de la Ley Hipotecaria, *supra*, permite la anotación preventiva de demanda únicamente respecto a acciones que, de acuerdo con sus propios términos, pueden concluir con una ejecutoria inscribible. Art. 114.1 del Reglamento Hipotecario, 30 L.P.R.A. sec. 2003–114.1, edición especial. S. Torres Peralta, *La anotación preventiva de demanda y el aviso de pleito pendiente al amparo del Art. 112(1) de la nueva Ley Hipotecaria y del Registro de la Propiedad*, 42 Col. Abo. P.R. 407, 412–413 (1981); L. Mojica Sandoz, *Apuntes sobre el origen, efectos y extinción de las anotaciones de demanda y de embargo*, 52 Rev. Jur. U.P.R. 451–458 (1983).

■ El Art. 113 de la Ley Hipotecaria, *supra*, adoptó como norma la interposición de la figura del juez para la anotación preventiva de demanda que permite el Art. 112(1ro) de la Ley Hipotecaria, *supra*. Sólo, a manera de excepción, la autoriza sin intervención judicial cuando la causa de acción se funda en un derecho real inscrito como fundamento para su ejercicio.

Del historial legislativo surge que el propósito fundamental para las limitaciones introducidas por los Arts. 112(1ro) y

113 de la Ley Hipotecaria, *supra*, fue el "evitar las anotaciones de demandas viciosas . . . [alejando así] la posibilidad de perjuicio indebido por acciones fraudulentas y aliger[ando] el trámite en las ejecuciones de hipoteca". Informe de la Comisión de lo Jurídico del Senado sobre el alcance del P. del S. 792, 8va Asamblea, 3ra Sesión Ordinaria de 1979, pág. 11;(6) Torres Peralta, *supra*.

■ Aunque la Ley Hipotecaria no exige fianza para la autorización de la anotación preventiva, el tribunal puede exigirla de acuerdo con las circunstancias particulares de cada caso. Regla 56.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Kermit Const. Corp. v. Registrador*, 103 D.P.R. 583, 588–590 (1975); *Banco Central y Economías v. Registrador*, 111 D.P.R. 773, 778–780 (1981); Mojica Sandoz, *supra*, pág. 454. Además, a tenor con lo resuelto en *Rocafort v. Álvarez*, supra, pág. 572, el demandado que sufre la anotación de sus bienes puede, al amparo del párrafo segundo de la Regla 56.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III, liberarlos de este gravamen interino mediante la prestación de fianza.

En *Rocafort v. Álvarez*, supra, también tuvimos la oportunidad de comentar sobre la intervención judicial al amparo del Art. 113 de la Ley Hipotecaria, *supra*, y sobre la naturaleza de los documentos que el tribunal debía tomar en consideración al emitir su orden. Allí recogimos, con aprobación, las expresiones de Morell y Terry de que esta norma entraña necesariamente lo siguiente:

Uno, la existencia de documento que excluye toda reclamación fundada en contratos verbales, información testifical u otros medios más o menos informales; y otro, *que ese documento sea bastante para obtener la anotación, llevando al ánimo cierta convicción de verdad y de probable éxito*, y ha-

---

(6) El P. del S. 792 se convirtió en la actual Ley Hipotecaria.

llándose desde luego comprendida por el carácter real de la reclamación y afectar a derechos reales inscritos. . . . El documento no es necesario que sea público; pero su naturaleza y circunstancias han de apreciarse debidamente por la autoridad judicial. (Énfasis suplido.) J. Morell y Terry, *Comentarios a la Legislación Hipotecaria*, Madrid, Editores Hijos de Reus, 1917, T. 3, pág. 41.

◼ La apreciación crítica de lo que constituye "documento bastante" en el cual se fundamente la procedencia de la anotación preventiva de demanda queda "al prudente arbitrio del juzgador . . .". Art. 113 de la Ley Hipotecaria, *supra*. Este documento, aunque puede ser público o privado, tiene que tener la característica esencial de ser suficiente como para inducir al juzgador a pensar que efectivamente podría existir el derecho que se reclama; que "existe razón fundada para considerar la posibilidad de que la reclamación habrá de prevalecer; es decir, el señor Juez que entienda en el caso determinará la existencia de una especie de 'causa probable'". R. Vélez Torres, *Las anotaciones preventivas y las notas marginales*, (capítulo de obra inédita), pág. 158; R.M. Roca Sastre, *Derecho Hipotecario*, 6ta ed., Barcelona, Ed. Bosch, 1968, T. II, pág. 864; Mojica Sandoz, *supra*.

◼ El hecho de que se exija "documento suficiente" sobre el cual se fundamente la determinación de si procede o no la anotación preventiva de la demanda no significa que, necesariamente, el tribunal tenga que denegarla si con la solicitud no se acompañan estos documentos cuando si de un examen de los autos del caso surge que allí consta dicha información. Después de todo, no podemos interpretar que la ley requiere actos innecesarios.

Procede, pues, examinar los documentos que obran en los autos del presente caso. Un análisis de la demanda enmendada de 6 de abril de 1987, junto con la contestación de la codemandada Pérez de Cabanillas a la misma, refleja que tanto la demandante como la codemandada Pérez de Cabani-

llas aceptaron los hechos siguientes: (1) que el causante, Don Teodorico Pérez Meri, contrajo matrimonio con la demandante, Doña Alicia Echevarría Jiménez, el 9 de enero de 1955 y se divorciaron el 31 de agosto de 1976, y (2) que durante el matrimonio con Doña Alicia, Don Teodorico "realizó ventas de bienes inmuebles en las cuales comparecía él solamente". Contestación a la demanda enmendada, Apéndice, pág. 69.

También obra en autos una fotocopia del Acta de Edificación Núm. Diecinueve de 17 de febrero de 1965, otorgada por Don Teodorico Pérez Meri ante el notario Ángel F. Vélez Pozo. De este documento, que fue sometido por la codemandada Pérez de Cabanillas, surge lo siguiente: (1) que al otorgarlo, Don Teodorico estaba casado con Doña Alicia; (2) que compareció solo a su otorgamiento; (3) que Don Teodorico aseveró haber adquirido la propiedad objeto de la anotación preventiva en pago de una hipoteca, el 31 de octubre de 1964, mientras aún estaba casado con Doña Alicia, y (4) que en dicha propiedad construyó, también, durante el matrimonio con Doña Alicia, una estructura residencial.[7]

■ El Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641, establece una presunción de ganancial para los bienes adquiridos durante el matrimonio. Cuando surge una controversia sobre la naturaleza —privativa o ganancial— de bienes adquiridos durante el matrimonio, recae sobre el que sustenta la naturaleza privativa del bien el peso de la prueba. *García v. Montero Saldaña*, 107 D.P.R. 319, 335–336 (1978); *Espéndez v. Vda. de Espéndez*, 85 D.P.R. 437, 444–445 (1962).

■ Cuando uno de los cónyuges comparece solo al Registrador de la Propiedad y solicita que el título de un bien presuntivamente ganancial sea inscrito como de su exclusiva

---

[7] Don Teodorico también hizo constar en el acta de edificación que tanto la propiedad como la edificación las adquirió con bienes privativos.

pertenencia, dicho asiento no prejuzga la naturaleza privativa o ganancial de la propiedad. El principio de inscripción tiene como axioma que "el hecho de que se tenga inscrito un derecho real, no ... hace [a la persona] titular si de acuerdo con las reglas del Código Civil realmente no lo es". D. Martínez Irizarry, *Los principios hipotecarios bajo la nueva legislación en Puerto Rico*, 50 Rev. Jur. U.P.R. 195, 197 (1981); D. Martínez Irizarry, *El principio de inscripción y el principio de legitimación en Puerto Rico*, 38 Rev. Jur. U.P.R. 193 (1969); Roca Sastre, *op. cit.*, T. I, págs. 563–567.

Según las circunstancias antes descritas y el estado de derecho aplicable, el tribunal de instancia ejerció correctamente su discreción al evaluar la suficiencia de los documentos y al conceder la anotación preventiva solicitada. De los documentos que obran en autos razonablemente podía concluir que en efecto podría existir el derecho que se reclama. No estamos ante una demanda viciosa. El primer señalamiento de error del Recurso CE-87-814 no se cometió.

IV

*Prohibición de enajenar*

Como su segundo señalamiento de error en el Recurso CE-87-814, la codemandada Pérez de Cabanillas plantea que el tribunal de instancia abusó de su discreción al negarse a autorizar la venta de la propiedad sita en la Calle Siracusa B-4 de la Urbanización Town Park en Río Piedras.

De los autos surge que el 21 de mayo de 1982 la parte demandada, en ese entonces el causante Don Teodorico, se comprometió a no enajenar el inmueble sin la previa autorización del tribunal. También acordó voluntariamente que "[d]e realizarse dicha venta, el producto de la misma se de-

posita[ría] en el tribunal para que en su día el tribunal [dispusiera]".(8)

El 20 de julio de 1987 la codemandada solicitó autorización para vender el inmueble y el 2 de noviembre reiteró su solicitud. El 6 de noviembre el tribunal dispuso de .dichas mociones mediante resolución en la que simplemente señaló lo siguiente: "Aviso de pleito grava la propiedad que se pretende vender." Apéndice, pág. 6.

El tribunal no negó la autorización de venta. Meramente se limitó a dejar bien establecido que la propiedad quedaba sujeta al resultado de este caso, ya que mediante la anotación preventiva de aviso de demanda en el Registro de la Propiedad se le estaba advirtiendo a terceros del litigio que existía sobre la titularidad del inmueble. "Por lo tanto, todo aquel que pretenda adquirir el derecho que se anuncia está en litigio, o que, de alguna otra forma interese negociar con relación al mismo, no puede adquirir sin el riesgo que constituye la anotación al efecto de que el derecho o titularidad en cuestión puede desvanecerse en su perjuicio." Vélez Torres, *op. cit.*, pág. 163.

El segundo error señalado en el Caso Núm. CE-87-814 no se cometió.

### V

*Sustitución de partes —Regla 22.1(a) de Procedimiento Civil— y el término para emplazar*

Arguye el codemandado Pérez Colón, en su Recurso CE-88-150, que el tribunal de instancia erró al ordenar un nuevo emplazamiento mediante edicto para traerlo al caso como parte sustituida.

La Regla 22.1(a) de Procedimiento Civil dispone:

---

(8) Minuta de 21 de mayo de 1982; Escrito Informativo y solicitud de vista de la codemandada Pérez Cabanillas de 8 de junio de 1982.

(a) Si una parte falleciere y la reclamación no quedare por ello extinguida, cualquiera de las partes en el procedimiento o sus abogados notificarán de su fallecimiento al tribunal y a las otras partes dentro del término de treinta (30) días contados desde la fecha en que se conozca tal hecho. *El tribunal, a solicitud hecha dentro de los seis (6) meses siguientes a la fecha de dicha notificación, ordenará la sustitución de la parte fallecida por las partes apropiadas. Si la sustitución no se hiciere, según se dispone anteriormente, el pleito será sobreseído en cuanto a la parte fallecida.* Podrán presentar la solicitud de sustitución los sucesores o representantes del finado o cualquiera de las partes, y *dicha solicitud se notificará a las partes en la forma dispuesta en la Regla 67, y a las que no lo fueren en la forma que dispone la Regla 4.* (Énfasis suplido.) 32 L.P.R.A. Ap. III.

La actual Regla 22.1(a) de Procedimiento Civil, *supra*, tiene su génesis en la anterior Regla 22.1 y en la Regla 25 de Procedimiento Civil federal. Mediante la nueva Regla 22.1(a), *supra*, se estableció un término de treinta (30) días, contados desde la fecha en que se conozca del fallecimiento, para notificar al tribunal y se redujo a seis (6) meses el término para solicitar la sustitución.

El propósito de la Regla 22.1(a) de Procedimiento Civil, *supra*,[9] es el de establecer un mecanismo procesal mediante el cual, cuando una parte falleciere y la acción no quedare por ello extinguida, dicha acción se pueda continuar a favor o en contra de la parte realmente interesada. Esta regla, al igual que la Regla 39.2(b) de Procedimiento Civil,

---

[9] La Regla 42 del Reglamento del Tribunal Supremo es la que rige la sustitución en este Tribunal. Dicha regla dispone:

"Si estando pendiente una apelación ante este Tribunal alguna de las partes falleciere, podrán los herederos o el representante legal de la persona fallecida comparecer voluntariamente al Tribunal y ser admitidos como partes en el pleito; y si no lo hicieren voluntariamente, la otra parte podrá entonces solicitar que se haga constar en los autos el hecho de la muerte y el pleito seguirá en sus trámites en la forma que el Tribunal ordene." 4 L.P.R.A. Ap. I-A, R. 42.

*supra*, al establecer los términos de treinta (30) días para notificar del fallecimiento de la parte y sesenta (60) días para solicitar la sustitución, atiende el interés público de que los asuntos en los tribunales se solucionen de forma expedita para evitar el perjuicio que la dilación pueda causar a las partes. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Estos términos, claro está, podrán ser prorrogados a tenor con lo dispuesto en la Regla 68.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. *Lugo v. Municipio de Bayamón*, 111 D.P.R. 679 (1981); *Banco Metropolitano v. Berríos*, 110 D.P.R. 721 (1981).

La Regla 22.1 de Procedimiento Civil, *supra*, distinto a su contraparte en la esfera federal, específicamente impone el deber de notificar sobre el fallecimiento de la parte, en el término de treinta (30) días contados a partir de la fecha en que se conozca el hecho, no sólo a las partes en el procedimiento, sino también a sus abogados. También, contrario a lo dispuesto en la regla federal, la sustitución no es discrecional; procede si en relación con la solicitud de sustitución se ha cumplido con el trámite procesal provisto en la Regla 22.1, *supra*.[10]

A distinción de una enmienda a la demanda para traer una nueva parte, "en la substitución, la parte substituída, en todo, excepto en el nombre, ocupa la misma posición con relación a la causa de acción que se continúa contra él . . . . [L]a causa de acción con relación a la cosa litigiosa permanece inalterada". *Carrasco v. Auffant*, 77 D.P.R. 156, 160–161 (1954). "La realidad es que el trámite procesal de sustitución en nada afecta los derechos sustantivos de las partes." *Pereira v. I.B.E.C.*, 95 D.P.R. 28, 66 (1967).

---

[10] En relación con la Regla 25 de Procedimiento Civil federal, véase 7C *Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d* Secs. 1951–1962 (1986).

La moción sobre sustitución de parte deberá notificarse a las partes ya incluidas en el pleito en la forma dispuesta por' la Regla 67 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Sin embargo, cuando se requiera sustituir a una parte por otra que no está en el pleito, será necesario adquirir jurisdicción *in personam* sobre esta nueva parte. En este caso habrá que emplazar a la parte y notificarle de la solicitud de sustitución de partes de acuerdo con lo dispuesto en la Regla 4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, sobre emplazamiento. 7C *Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d.* Sec. 1951, págs. 523–524 (1986). La parte sustituida tiene derecho a que se le notifique siguiendo el trámite de estricto cumplimiento provisto por la Regla 4, *supra*, de manera que tenga la oportunidad de ser oído y defenderse si así lo desea. *Rodríguez v. Nasrallah*, 118 D.P.R. 93 (1986). Claro está, si la nueva parte comparece voluntariamente y realiza algún acto sustancial que la constituya en parte en el pleito, se somete a la jurisdicción del tribunal y esto hace innecesario el trámite de notificación y emplazamiento de la Regla 4, *supra. Claudio v. Casillas Mojica*, 100 D.P.R. 761, 773 (1972).

En relación con la comparecencia de una parte en un pleito, los abogados que representan a una o más personas en casos de partes múltiples deben ejercer gran cuidado al suscribir los escritos que presenten al tribunal y al comparecer a las vistas, indicando específicamente a las personas que representan. Si un abogado hace constar que está compareciendo a nombre de la *parte demandada*, esto significa que está representando ·a todas las personas que han sido incluidas como demandadas. Su actuación, si entraña un acto sustancial en el proceso, establece una presunción de que todos estos demandados se han sometido voluntariamente a la jurisdicción del tribunal. "En causas de demandados múltiples, los abogados deben ser extremadamente

cuidadosos y específicos en cuanto al lenguaje de las posiciones adoptadas por sus respectivos representados y sus admisiones o defensas, particularmente en cuanto a hechos esenciales." *Berríos v. U.P.R.*, supra, pág. 95.

█ Por ser el codemandado Pérez Colón miembro de la sucesión Pérez Meri y quien sustituiría al demandado, éste es una parte indispensable que tiene que ser traída al caso para que el tribunal pueda resolver la controversia. Regla 16 de Procedimiento Civil, 32 L.P.R.A. Ap. III. *Fuentes v. Tribl. de Distrito*, 73 D.P.R. 959, 987 (1952); Cuevas Segarra, *op. cit.*, Cap. IV, págs. 86–87 y 91–95.

En el presente caso, el 25 de octubre de 1982 el abogado del demandado fallecido notificó al tribunal sobre el fallecimiento de Don Teodorico el 19 de octubre de 1982. El 1ro de diciembre de ese mismo año la demandante presentó moción para solicitar la sustitución de Don Teodorico por "sus herederos, la antes tutora Rayda Pérez de Cabanillas y su hermano Rafael Pérez Colón". Esta moción la notificó solamente a la entonces representación legal de la codemandada Pérez de Cabanillas. Regla 67 de Procedimiento Civil, *supra*.

El 8 de diciembre de 1982 el tribunal emitió una resolución mediante la cual aceptó la sustitución de parte. Luego de esto se suscitaron una serie de incidentes procesales relacionados con la propiedad objeto del litigio, incluso la presentación de una moción por la codemandada Pérez de Cabanillas en la que informó al tribunal lo siguiente:

1. Mediante Orden notificada el pasado 3 de marzo de 1983 este Honorable Tribunal requiere de esta parte que manifieste "si accede a que la demandante habite la casa luego de poner al día la hipoteca hasta tanto se resuelva el pleito y/o se acepte la transacción ofrecida".

2. La compareciente ha ponderado detenidamente esta alternativa desde que la parte demandante la anunció en su Moción de 10 de enero de 1983, *y ha consultado la misma con su hermano, Don Rafael Pérez Colón, residente del estado de*

*Florida, y cuyo consentimiento para lograr este acuerdo resultaría indispensable por resultar ser heredero forzoso de Don Teodorico Pérez Meri. Luego de dicha consideración han determinado que el acuerdo en cuestión no conviene a sus mejores intereses* y que lejos de simplificar este pleito podría complicarlo y por tanto entiende que debe rechazar, como rechaza, el mismo. (Énfasis suplido.)

Así las cosas, y sin que la codemandada Pérez de Cabanillas hubiese planteado al tribunal la necesidad de emplazar al codemandado Pérez Colón o hubiese solicitado el sobreseimiento del pleito a tenor con lo dispuesto por la Regla 22.1(a), *supra*, el 19 de abril de 1983 comparecieron *las partes* —en esta ocasión el entonces abogado de la codemandada Pérez de Cabanillas suscribió la moción a nombre de la *parte demandada*— en una moción conjunta para informar al tribunal que se habían reunido para una conferencia con antelación al juicio y que:

2. Durante dicha reunión los abogados suscribientes se percataron que por lo extenso de la evidencia documental y el período de tiempo envuelto cerca de 30 años necesitan evaluar la misma con más detenimiento y previa consulta con sus representados por lo que no estarían listos para celebrar la Conferencia con Antelación al Juicio señalada.

3. *Existe una gran posibilidad que después del análisis antes mencionado las partes lleguen a un acuerdo que evitaría la celebración de un juicio extenso y complicado por lo que esta solicitud va encaminada hacia una economía procesal.* (Énfasis suplido.)

Desde este momento en adelante, tanto de las minutas del tribunal como de las mociones presentadas surge que la entonces representación legal de la codemandada Pérez de Cabanillas compareció a nombre de la *parte demandada*. Cabe señalar que anteriormente había comparecido sólo a nombre de la codemandada.

El 1ro de marzo de 1985 la parte demandante solicitó señalamiento para conferencia con antelación al juicio. El 5 de

marzo, inexplicablemente, el tribunal ordenó motu proprio "emplazar a la Sucesión Teodorico Pérez Meri conforme a derecho", e indicó que el caso no estaba listo; a esto se allanó la demandante. Esta orden del tribunal dió lugar a una serie de mociones y órdenes relacionadas con el emplazamiento y la enmienda a la demanda para llevar a cabo la sustitución. Estos trámites culminaron en la Resolución de 28 de octubre de 1987 que ahora se encuentra ante nuestra consideración. Los autos originales también reflejan que se llevaron a cabo gestiones para lograr una transacción y las dificultades de la parte demandante con su anterior representación legal.

Un análisis de la totalidad de las circunstancias de este caso y su trayectoria procesal, según surge de los autos originales, demuestra que el tribunal de instancia no abusó de su discreción al prorrogar el término para llevar a cabo la sustitución de parte, permitiendo el emplazamiento del codemandado Pérez Colón. Así se sirve mejor los fines de la justicia.

Por todo lo antes expuesto, *se dictará sentencia mediante la cual se confirme las resoluciones recurridas y se devuelva el caso al Tribunal Superior, Sala de San Juan, para que continúen los procedimientos de forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Hernández Denton no intervino.