## En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| NELSON VALENTIN GONZALEZ Y OTROS<br><br>Demandante-Peticionaria<br><br>V.<br><br>PABLO CRESPO TORRES, ALCALDE MUNICIPIO DE AÑASCO<br><br>Demandado-Recurrido | Certiorari<br><br>**98TSPR83** |

Número del Caso: **CC-97-0614**

Abogados Parte Peticionaria:

    LCDO. MIGUEL A. MONTALVO DELGADO

Abogados Parte Recurrida:

    LCDO. ISRAEL ROLDAN GONZALEZ

Tribunal de Instancia: Superior, Sala de Mayaguez

Juez del Tribunal de Primera Instancia:

    Hon. Ricardo Santana Ramos

Tribunal de Circuito de Apelaciones:

    **Circuito Regional IV, Aguadilla Mayaguez**

Juez Ponente: **HON. ISMAEL COLON BIRRIEL** –

PANEL INTEGRADO POR:

    **HONS. BRAU RAMIREZ,**

    **COLON BIRRIEL** Y

    **FELICIANO DE BONILLA**

Fecha: 6/26/1998

Materia: **INJUNCTION**

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

NELSON VALENTIN GONZALEZ

Y OTROS

Demandante-Peticionario

vs. CC-97-614 CERTIORARI

PABLO CRESPO TORRES

ALCALDE MUN. DE AÑASCO

Demandado-Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor **FUSTER BERLINGERI**.

San Juan, Puerto Rico, a 26 de junio de 1998.

Tenemos la ocasión para interpretar el alcance de la Regla 32.2 de Procedimiento Civil de Puerto Rico. Nos toca resolver si procede excluirse del juicio el testimonio de un testigo esencial, como sanción por éste no haber comparecido antes a deponer, luego de citársele para ello, cuando la parte que interesa el testimonio judicial no es responsable de que a dicho testigo no se le haya podido tomar una deposición con anterioridad al juicio.

**I**

El 22 de julio de 1991, el Dr. Nelson Valentín y el Municipio de Añasco suscribieron un contrato en virtud del cual el galeno prestaría servicios médicos

nocturnos en el Centro de Diagnóstico y Tratamiento de dicho municipio. El contrato aludido se extendía sólo hasta el 22 de agosto de 1991, cuando podía ser renovado por mutuo acuerdo.

Conforme a las alegaciones de la parte demandante, antes de que el contrato aludido expirara, un funcionario municipal convocó al doctor Valentín para que acudiese a renovar su contrato, por lo que éste compareció a la alcaldía de Añasco el 14 de agosto de 1991 y suscribió un nuevo contrato de servicios médicos, igual al anterior, hasta el 31 de diciembre de 1991. Ese día no se le entregó copia del contrato escrito al doctor Valentín, porque el Alcalde, en representación del municipio, debía firmarlo también y no lo había hecho aún. El doctor Valentín suscribió el contrato aludido en presencia del Dr. Rolando Monteverde, quien también firmó el suyo de igual modo en esa misma ocasión.

El 18 de agosto de 1991,mientras hacía su guardia nocturna en el Centro de Añasco, el doctor Valentín procuró y obtuvo ayuda de un médico privado en relación a una paciente del Centro, luego de hacer esfuerzos infructuosos para obtener tal ayuda de funcionarios del municipio. El médico que ayudó a la paciente aludida era el candidato a la alcaldía de Añasco del partido opositor al del incumbente que antes había contratado al doctor Valentín.

En los días siguientes, el doctor Valentín fue excluido del programa de servicios médicos nocturnos del Municipio, alegadamente por órdenes del Alcalde que antes lo había contratado. El doctor Valentín no volvió a prestar servicios en el programa en cuestión a partir del 31 de agosto de 1991.

Oportunamente, el doctor Valentín instó una acción contra el Alcalde de Añasco. Solicitó que a éste se le ordenara desistir de su alegada actuación ilegal y que le permitiera al peticionario continuar prestando servicios médicos nocturnos en el Centro, conforme al contrato que tenía con el Municipio. El doctor Valentín solicitó también el pago de todas las guardias médicas que hubiese realizado si se lo hubieran permitido, más la indemnización de otros daños y perjuicios sufridos por la actuación del Alcalde. En particular, alegó que había incurrido en obligaciones económicas por razón de su expectativa de continuar prestando servicios médicos nocturnos al Municipio.

En contestación a la acción del doctor Valentín, el Alcalde de Añasco alegó, inter alia, que el único contrato de éste con el Municipio había expirado y no había sido renovado. Se negó

asimismo que el Municipio le hubiera ofrecido una renovación de su contrato al doctor Valentín y que éste hubiese firmado un nuevo contrato.

Luego de varios incidentes procesales, que no son pertinentes a lo que aquí nos concierne, el 30 de noviembre de 1991, durante el descubrimiento de prueba, el demandante anunció a la parte demandada que el Dr. Rolando Monteverde sería uno de sus testigos. El demandante, además, **le envió a la parte demandada, una copia de una declaración jurada del Doctor Monteverde**, en la cual éste afirmaba que el 14 de agosto de 1991, tanto él como el doctor Valentín habían firmado nuevos contratos para prestar servicios médicos nocturnos al Municipio, y que lo habían hecho en la oficina del Director de Personal del Municipio de Añasco a las 4:00 p.m. de ese día.

El 20 de julio de 1992, el demandante presentó una moción, para solicitar la citación de testigos para una vista que estaba señalada próximamente, e incluyó al doctor Monteverde entre dichos testigos, **señalando la dirección precisa de éste**. Dicha moción fue notificada a la parte demandada.

Así las cosas, el 13 de agosto de 1992, se celebró una conferencia con antelación al juicio, en la cual la parte demandada informó que interesaba tomar deposiciones de los testigos anunciados por el demandante. El foro de instancia concedió entonces un término a las partes para concluir el descubrimiento de prueba. Ello dio lugar a que se citara al doctor Monteverde para tomarle una deposición el 24 de octubre de 1992.

Ese día el doctor Monteverde no compareció por encontrarse enfermo. El abogado de la parte demandada le comunicó entonces al del demandante que interesaba tomarle la deposición al doctor Monteverde el 5 de diciembre de 1992, por lo que éste, **el propio abogado del demandante**, citó al doctor Monteverde para la toma de deposición aludida, y le apercibió por escrito que podía ser encontrado incurso en desacato si no comparecía. Alegadamente, el doctor Monteverde acudió a la cita aludida, pero luego se marchó del lugar, debido a que uno de los abogados de las partes no se presentó a la hora convenida y el doctor no podía esperar.

Posteriormente, luego de celebrarse otra conferencia con antelación al juicio, el foro de instancia le concedió un término a la parte demandada para que le tomara la deposición que interesaba al doctor Monteverde. De nuevo, el **propio abogado** de la **parte demandante** tramitó entonces que el tribunal de

instancia emitiese una citación al doctor Monteverde para la toma de la deposición para el 28 de mayo de 1994, **la primera y única citación** emitida por el tribunal para tales fines. El abogado de la parte demandante se aseguró asimismo de que dicha citación judicial fuese debidamente diligenciada, pero el doctor Monteverde no compareció. Los representantes legales de ambas partes entonces acordaron pautar la toma de la deposición para el 18 de junio de 1994, y el abogado del demandante, de nuevo, se encargó de citar al doctor Monteverde para ello, pero este tampoco compareció.

Con estos antecedentes, el 30 de agosto de 1994 se celebró el juicio. El doctor Monteverde compareció entonces, pero el tribunal a quo, a instancia del abogado de la parte demandada, no permitió su testimonio. Según surge de las minutas del juicio, la representación legal del demandante se opuso a la exclusión del testimonio esencial del doctor Monteverde, y le indicó al foro de instancia que dicho testimonio no constituiría una sorpresa para la parte demandada, debido a que ésta tenía desde hacía tiempo una declaración jurada del doctor Monteverde sobre lo que éste testificaría en el juicio. No obstante, el tribunal no permitió la presentación del testimonio del doctor Monteverde. Consecuentemente, dicho foro indicó en su sentencia que el demandante no había presentado prueba para confirmar su propio testimonio de que había firmado un segundo contrato con el Municipio. Concluyó que no existía el alegado segundo contrato, y desestimó la acción del demandante.

Inconforme con este dictamen, el demandante acudió ante el Tribunal de Circuito de Apelaciones y alegó, inter alia, que el foro de instancia había incidido al no permitirle presentar el crucial testimonio del doctor Monteverde. El foro apelativo, por voto de 2-1, confirmó la decisión del tribunal sentenciador, y convalidó la exclusión del testimonio en cuestión, como sanción justificada por las "reiteradas incomparecencias a la toma de deposición a las que fue citado".

De esta decisión acudió el demandante ante nos. En lo pertinente, adujo que el foro apelativo había errado al confirmar la exclusión del juicio de un testigo crucial suyo, sin que dicha parte fuese responsable de modo alguno de la incomparecencia de éste a la toma de deposición interesada por la parte contraria. Señaló que se le había sancionado de modo drástico, a pesar de que dicha parte nunca se negó a descubrir prueba.

El 27 de febrero le concedimos término a la parte recurrida para mostrar causa, si alguna tuviere, por la cual no debíamos expedir el auto solicitado y revocar la sentencia del foro apelativo. Dicha parte compareció, por lo que procedemos a resolver, conforme a lo intimado.

## II

Es menester enfatizar de entrada, que el testimonio del doctor Monteverde era evidentemente de gran importancia para que el demandante pudiese probar sus alegaciones en el caso de autos. Según se desprende de lo que declaró en el juicio el propio Director de Personal del Municipio, el procedimiento para procurar la continuada prestación de servicios médicos como los de autos se iniciaba con la decisión del coordinador de guardias médicas del municipio de renovar el contrato de servicio interesado; luego se preparaba el contrato correspondiente, y se citaba al doctor concernido para que compareciera a firmarlo en la oficina del Director de Personal. El demandante ha alegado que el procedimiento aludido fue exactamente el que se siguió en su caso, pero que el nuevo contrato que él suscribió ha sido ocultado o desaparecido por el Municipio. El testimonio del doctor Monteverde, quien parece ser un tercero no interesado en el presente litigio, resultaba importante aquí, debido a que constituía la única corroboración de lo alegado por el demandante. Obviamente dicho testimonio podía ser determinativo de la cuestión esencial de si el contrato entre el Municipio y el demandante fue de hecho renovado.

En vista de lo anterior, procede entonces que se examine si el tribunal de instancia actuó correctamente al excluir del juicio el testimonio crucial del doctor Monteverde.

## III

Debe notarse que, como bien señala el peticionario, el hecho de que el Municipio demandado no lograra tomarle la deposición que interesaba al doctor Monteverde, no es atribuible de modo alguno a la parte demandante, que es la parte a quien se ha penalizado por la incomparecencia del doctor Monteverde a las citas que se le hicieron para tomarle la deposición en cuestión. No hay nada en el récord del caso de autos que siquiera sugiera que el demandante estuvo involucrado de algún modo en la incomparecencia de dicho testigo a la deposición que interesaba la parte demandada. Por el contrario, en todo momento el demandante hizo lo que estaba a su alcance para que se lograra la toma de deposición aludida. De hecho, quien se ocupó de citar

al doctor Monteverde en las distintas ocasiones en que se intentó tomar su deposición fue precisamente el propio demandante, que incluso acudió en una ocasión al tribunal de instancia para obtener una citación judicial para ello.

El foro apelativo, que confirmó la actuación del tribunal de instancia, se amparó para ello en lo que dispone la Regla 34.2(b)(2) de Procedimiento Civil, 32 L.P.R.A. Ap. III R.34.2(b)(2), que lee como sigue:

> (b) **Otras consecuencias**. Si una parte o un funcionario o agente administrador de una parte o una persona designada para testificar a su nombre, según disponen las Reglas 27.5 ó 28, dejare de cumplir una orden para llevar a cabo o permitir descubrimiento de prueba, incluyendo una orden bajo la Regla 34.1 y bajo la Regla 32, el tribunal podrá dictar, con relación a la negativa, todas aquellas órdenes que fueren justas, y entre ellas las siguientes:
>
>> (1) . . .
>>
>> Una orden negándose a permitir **a la parte que incumpliere** sostener u oponerse a determinadas reclamaciones o defensas, o prohibiéndole la presentación de determinada materia en evidencia. (Enfasis suplido.)

Como puede observarse, la disposición aludida, en lo que es pertinente aquí, permite que un tribunal prohiba la presentación de determinada materia en evidencia cuando la **parte** que interesa tal presentación hubiese **incumplido con una orden** de dicho tribunal para llevar a cabo o permitir descubrimiento de prueba. Dicha disposición, por sus propios términos, que son claros y contundentes, requiere: (1) que el tribunal haya emitido antes una orden para llevar a cabo o permitir descubrimiento de prueba; y (2) que la **parte** que interesa la presentación de la prueba hubiese incumplido la orden referida. En efecto, la regla federal de la cual procede la nuestra, la Regla 37(b)(2)(B), ha sido consistentemente interpretada como fundamento para sanciones como la del caso de autos, cuando una **parte** desobedece o incumple una **orden judicial** sobre descubrimiento de prueba. Véase, <u>Barret v. Atlantic Richfield Co.</u>, 95 F 3d 375 (1996);

Meléndez v. Illinois Bell Tel. Co., 79 F 3d 661 (1996); Derby v. Godfather's Pizza, 45 F. 3d 1212 (1995); Orjias v. Stevenson, 31 F 3d 995 (1994); Parker v. Freightliner Corp., 940 F 2d 1019 (1991); Cosme v. Hospital Pavía, 922 F 2d 926 (1991); Hule v. Eaton Corp., 825 F 2d 448 (1987); In re Fine Paper Antitrust Litigation, 685 F 2d 810 (1982).

En el caso de autos, como se ha indicado ya, la parte que sufrió la exclusión del testimonio en ningún momento incumplió orden judicial alguna sobre descubrimiento de prueba. Como no estaba presente uno de los requisitos de la Regla en cuestión, pues, no podía privársele del testimonio aludido.

Debe tenerse en cuenta, además, que la medida severa de excluir del juicio el testimonio de un testigo crucial, que es análoga a la medida extrema de la desestimación, sólo debe usarse en circunstancias excepcionales, en casos en los cuales la conducta de la parte sancionada ha sido contumaz o de mala fe, cosa que no ocurrió aquí. Dorsey v. Academy Moving and Storage, 423 F 2d 858 (1970). Véase, además, In re Paoli Railroad Yard PCB Litigation, 35 F 3d 717 (1994); y, Jackson v. Harvard University, 900 F 2d 464 (1990). Sanciones tan drásticas como la de autos no son favorecidas judicialmente y sólo se justifican cuando la conducta de la parte a la que se le impone la sanción ha sido intencional. Hartman v. Tribunal Superior, 98 D.P.R. 124 (1969). Aplican al caso de autos, por analogía, nuestros pronunciamientos previos de que la imposición de sanciones procesales severas debe ocurrir sólo cuando no exista duda de la irresponsabilidad o contumacia de la parte contra quien se tomó la medida. Amaro González v. First Federal Savings, op. de 30 de marzo de 1993, 132 D.P.R. ___, 93 JTS 46. En este caso, no hubo nada en la conducta procesal del demandante que justificase la sanción que se le impuso.

Debe considerarse también que el propósito que anima la Regla 34.2 en general es el de proveerle al foro judicial una diversidad de remedios **para propiciar el descubrimiento de prueba**. La regla aludida proporciona al tribunal varias sanciones distintas para lograr dicho propósito, para que éste las utilice de acuerdo a la situación particular que tenga ante sí. La meta de este entramado procesal es darle efectividad al mecanismo de descubrimiento de prueba. Véase, Wright, Miller & Marcus, Federal Practice And Procedure, Vol. 8A, secc. 2281 (1994). Es por ello que la sanción principal que establece dicha regla es la de **desacato**. 32 L.P.R.A. Ap. III, secc. 34.2(a). Es tal sanción la que de ordinario procede, en casos de negativas a descubrir prueba, porque es la más útil para lograr el fin de

obtener el descubrimiento interesado. "Sanctions are intended to prompt a party to respond". Wright, Miller & Marcus, ibid, pág. 595.

En el caso de autos, si la parte demandada hubiese invocado específicamente el procedimiento de apremio y desacato, probablemente hubiese obtenido la deposición que interesaba. Dicha parte, sin embargo, nunca acudió al tribunal para ello. Tenía a su alcance el medio para obligar al Doctor Monteverde a comparecer a la toma de la deposición que interesaba, conforme lo disponen las Reglas 27.1 y 40.4 de Procedimiento Civil, pero no lo usó. No demostró la diligencia procesal que era imprescindible para poder invocar luego la sanción drástica de excluir el testimonio crucial del doctor Monteverde. Ya antes, en relación a la contestación de un interrogatorio, habíamos resuelto que para que una parte, que sea víctima del incumplimiento del deber de descubrir prueba, pueda invocar sanciones severas, debe haber desplegado la debida diligencia para procurar el descubrimiento de prueba que interesaba. Pepín v. Ready Mix Concrete, 70 D.P.R. 758 (1950). Ello no ocurrió en el caso de autos, lo que constituye una razón más por la cual no procedía la exclusión del testimonio del doctor Monteverde.

Finalmente, debe tenerse en cuenta que reiteradamente hemos resuelto que existe una política judicial de que los casos se ventilen en sus méritos. Rivera et al. v. Superior Pkg., Inc. et al., op. del 9 de diciembre de 1992, 132 D.P.R. ___, 92 JTS 165; Mercado v. Panthers Military Soc. Inc., 125 D.P.R. 98 (1990); Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664 (1989); Maldonado v. Srio. de Recursos Naturales, 113 D.P.R. 494 (1982); Garriga Gordils v. Maldonado Colón, 109 D.P.R. 817 (1980); Acevedo v. Compañía Telefónica de Puerto Rico, 102 D.P.R. 787 (1974); Ramírez de Arellano v. Srio. de Hacienda, 85 D.P.R. 823 (1962). Esta política fundamental no se cumple cuando a una parte se le priva de traer al juicio un testigo esencial, sin que hayan razones de peso para tal privación imputables a dicha parte. Por otro lado, debe recordarse que el derecho a presentar testigos en apoyo de una reclamación es uno de los ejes centrales del debido proceso de ley. Ortiz Cruz v. Junta Hípica, 101 D.P.R. 791 (1973). Véase, además, Pueblo v. Morales Rivera, 118 D.P.R. 155 (1986); Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982); y Pagán v. Registrador, 62 D.P.R. 594 (1943). No puede afectarse ese derecho, excepto en situaciones en que ello esté plenamente justificado.

Como hemos señalado antes, todo proceso adjudicativo se informa en los valores superiores de hallar la verdad y hacer justicia.

Pueblo v. Miranda, op. del 1 de junio de 1992, 130 D.P.R. ___, 92 JTS 59; Echevarría Jiménez v. Sucn. Pérez Meri, supra, pág. 675; Berríos v. U.P.R., 116 D.P.R. 88 (1985); J.R.T. v. Aut. de Comunicaciones, 110 D.P.R. 879 (1981). Por eso, la decisión de un tribunal de excluir del juicio un testimonio crucial tiene que estar fundamentada en la más imperiosa justificación. No cabe duda de que nuestro ordenamiento procesal consagra un innegable interés en la pronta solución de las controversias y en que las partes puedan llevar a cabo un descubrimiento de prueba amplio y expedito, pero ambos intereses presuponen una acción diligente de la parte concernida o una acción entorpecedora de la otra parte, cosas que no están presentes en este caso. No existe aquí, pues, la imperiosa justificación que permita conculcar los fines preeminentes del proceso judicial de hallar la verdad y hacer justicia. El balance equitativo entre los intereses en conflicto que el tribunal debe hacer en casos como el de autos, Dávila v. Hosp. San Miguel, 117 D.P.R. 807 (1986), resulta claramente en contra del dictamen impugnado.

En resumen, pues, erró el tribunal de instancia al ordenar la exclusión del testimonio en cuestión, sin antes haber usado su facultad de apremio y desacato para lograr que el testigo compareciese a la toma de deposición. Su dictamen no constituyó la "orden justa" que está prevista en la Regla 34.2(b). Erró igualmente el foro apelativo al confirmar la sentencia de instancia.

Por los fundamentos expuestos, se expedirá el auto solicitado; y se dictará sentencia para revocar la del 17 de septiembre de 1997 del foro apelativo, la del Tribunal de Primera Instancia, Sala Superior de Mayagüez del 19 de mayo de 1995; y para ordenar la celebración de un nuevo juicio, conforme a lo aquí resuelto.


**JAIME B. FUSTER BERLINGERI**

JUEZ ASOCIADO

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

NELSON VALENTIN GONZALEZ

Y OTROS

Demandante-Peticionario

vs. CC-97-614 CERTIORARI

PABLO CRESPO TORRES

ALCALDE MUN. DE AÑASCO

Demandado-Recurrido


**SENTENCIA**

San Juan, Puerto Rico, a 26 de junio de 1998.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente sentencia, se expide el auto solicitado; y se revoca la del 17 de septiembre de 1997 del foro apelativo, la del Tribunal de Primera Instancia, Sala Superior de Mayagüez del 19 de mayo de 1995; y se ordena la celebración de un nuevo juicio, conforme a lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río disiente sin opinión escrita.


Isabel Llompart Zeno

Secretaria del Tribunal Supremo

Retornar al índice anterior