# 97 DTA 187

RECEIVED

FEB 1 1 1998

SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE BAYAMON**
**PANEL II**

ANGELO E. ROSARIO CABEZA, ET AL
Demandantes

v.

JOSE FERRER VEGA, JUAN ANTONIO GARCIA COMO COMISIONADO DE SEGUROS
DE PUERTO RICO Y LIQUIDADOR DE LA CORPORACION INSULAR DE SEGUROS
Apelante el ultimo

NEW HAMPSHIRE INSURANCE COMPANY
Apelada

Núm. KLAN-96-00820

San Juan, Puerto Rico, a 8 de septiembre de 1997

Panel sustituto II integrado por su Presidente, el Juez González Román
y los Jueces Broco Oliveras y Córdova Arone

Broco Oliveras, Juez Ponente

En el presente recurso se impugna la Sentencia del Tribunal de Primera Instancia, Sala Superior de Bayamón, dictada el 7 de agosto de 1995, habiéndose archivado en autos copia de su notificación el 15 de agosto de 1995. Mediante la referida sentencia se desestimó por inactividad una acción de nivelación tramitada, primero por la aseguradora Corporación Insular de Seguros, y luego por el Comisionado de Seguros como liquidador de la referida aseguradora.

Por entender que no erró el tribunal sentenciador al desestimar la referida acción, procedemos a confirmar la Sentencia.

## I

El trámite procesal del caso se relata en lo sucesivo.

La aseguradora Corporación Insular de Seguros (CIS) puso fin a una reclamación instada contra varios co-demandados cuando pagó a los reclamantes la suma de $415,000. ■ Terminada esa fase de la litigación, CIS inició una acción niveladora en contra de la aseguradora New Hampshire Insurance Company (New Hampshire) con el fin de que ésta le reembolsara parte de lo pagado a los reclamantes. ■

Mediante moción de 6 de mayo de 1988, el Lcdo. Gonzalo J. Barreras Varona solicitó se le relevara de la representación legal de CIS. Esta moción fue declarada con lugar mediante orden de 17 de mayo de 1988. Luego del pago de la suma correspondiente por CIS, surgió el derecho de ésta de recobrar lo pagado en exceso que se reconoce a los deudores solidarios que pagán más de lo que les corresponde.

CIS, representado esta vez por el Lcdo. Robert Alex Fleming, presentó una moción de 5 de julio de 1988 solicitando una vista para dilucidar los asuntos pendientes. Como resultado de esta moción, el tribunal señaló una conferencia sobre el estado procesal del caso a celebrarse el 31 de octubre de 1988. En esta conferencia las partes acordaron reunirse posteriormente para someter una estipulación de hechos y memorando de derecho para que se resolvieran las controversias.

En reacción a una moción de 23 de enero de 1989 presentada por New Hampshire, el tribunal emitió una orden de 9 de marzo de 1989 dirigida a CIS y a otra parte para que informaran su posición sobre un proyecto de estipulación de hechos.

Al no responder CIS a la orden del Tribunal, New Hampshire solicitó en moción de 28 de abril de 1989 que se desestimara la acción de nivelación instada por CIS. El tribunal concedió 10 días a CIS para reaccionar a la moción. A través de una moción de 5 de junio de 1989, CIS informó haber enviado a New Hampshire las propuestas que estaba dispuesta a aceptar.

Los días 19 de junio, 12 de julio y 18 de julio de 1989 se radicaron mociones sobre cambio de representación legal de CIS y la Sucesión de Juan Ortiz Lorenzi.

El 6 de septiembre de 1989 el tribunal de instancia expidió una orden requiriendo a las partes que expusieran razones por las cuales no debía archivarse el caso por inactividad, según la Regla 39.2(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Por moción de 25 de septiembre de 1989 la Sucesión de Juan Ortiz Lorenzi manifestó su interés de continuar con la litigación. New Hampshire presentó varias mociones oponiéndose a la continuación de los procedimientos.

El día 12 de enero de 1990 renunció la Lcda. Myrna A. Font Castro como abogada de CIS. El Lcdo. Norberto Quiñones Gandarillas asumió la representación legal de CIS mediante moción de 7 de febrero de 1990.

New Hampshire presentó una moción de desestimación de 31 de mayo de 1990 alegando inactividad del pleito y falta de interés de CIS. Por moción de 7 de junio de 1990 CIS se opone a la solicitud de desestimación alegando que se había llevado a cabo descubrimiento de prueba.

El tribunal de instancia dictó una resolución de 14 de septiembre de 1990 denegando la moción para desestimar. A esta resolución New Hampshire solicitó reconsideración el 12 de octubre de 1990 a lo que se opuso CIS por moción de 5 de noviembre de 1990.

El próximo escrito presentado por CIS de 11 de junio de 1991 es una moción para que se señale una conferencia sobre el estado procesal del caso. El tribunal de instancia señaló dicha conferencia para el 3 de septiembre de 1991.

Para el 22 de enero de 1992 New Hampshire volvió a solicitar la desestimación del caso por la Regla 39.2(b), *supra*. Luego de una oposición de CIS, el tribunal de instancia denegó la solicitud de desestimación por resolución de 25 de febrero de 1992.

CIS presentó una moción el 19 de marzo de 1992 informando la intención de tomar deposiciones.

Posteriormente, el Comisionado de Seguros (el Comisionado) radicó un procedimiento en contra de CIS a base del Capítulo 40 del Código de Seguros de Puerto Rico, 26 L.P.R.A. secs. 4001-4024, con el fin de liquidar a esta aseguradora. La radicación de la petición de liquidación trajo como resultado la paralización del pleito que nos ocupa desde diciembre de 1992 hasta diciembre de 1993.

Para el 28 de diciembre de 1993, terminado el período de paralización, el tribunal de instancia señaló el 13 de enero de 1994 para la celebración de una conferencia sobre el estado procesal, que luego fue reseñalada para el 11 de febrero de 1994. Durante la conferencia, a solicitud del Comisionado, el tribunal le concede a éste 30 días para informar si continuaría con la acción de nivelación o si, por el contrario, habría de desistir de la misma.

El Lcdo. Thomas Durán Gelabert presentó el 22 de febrero de 1994 una moción de renuncia de representación en cuanto a CIS.

El 16 de marzo de 1994 el Lcdo. Nelson Rivera Cabrera asumió la representación del Comisionado.

Ante la inacción del Comisionado, New Hampshire presentó otra moción de desestimación por la Regla 39.2(b), *supra*, el 24 de octubre de 1994. El Comisionado no reaccionó a esta moción que fue notificada al Lcdo. Nelson Robles, abogado del Comisionado.

El tribunal dictó el 22 de febrero de 1995 sentencia decretando el archivo con perjuicio del caso por inactividad, la cual no le fue notificada al Comisionado. Para corregir esa omisión, New Hampshire solicitó el 6 de julio de 1995 que la sentencia le fuera notificada al Comisionado.

El Comisionado presentó el 2 de agosto de 1995 una Moción Asumiendo Representación Legal, Informando Posición y Otros Extremos. En dicha moción comparece el Lcdo. Juan A. Moldes Rodríguez como abogado del Comisionado, se informa que el Comisionado tiene el propósito de continuar con la acción de nivelación y solicita 10 días para familiarizarse con el expediente.

El tribunal de instancia dictó, el 22 de febrero de 1995, una sentencia enmendada *nunc pro tunc* en la que expresa que el Comisionado ha hecho caso omiso de las órdenes del tribunal por lo cual ordenó el archivo del caso bajo la Regla 39.2(a), *supra*.

El Comisionado radicó moción de reconsideración el 30 de agosto de 1995. En la misma alegó: que el proceso de liquidación de CIS provocó varios cambios en la representación legal; que esto

produjo el movimiento del expediente del caso de un lugar a otro; y que por esa razón no se había comparecido al tribunal luego de la renuncia del Lcdo. Nelson Robles.

Posteriormente, el Comisionado solicitó que se aclarara el estado procesal del caso mediante una moción de 17 de junio de 1996. En esta moción el Comisionado indica que gran parte de los atrasos no pueden imputársele y que el expediente del caso se extravió en los archivos de su oficina.

A esta moción el tribunal expidió una orden de 9 de julio de 1996 señalando que el caso estaba cerrado. La referida orden fue notificada con fecha de 12 de julio de 1996.

No conforme con el referido dictamen, el Comisionado instó el presente recurso imputándole al tribunal de instancia la comisión de los siguientes errores:

*"A. Erró el Honorable Tribunal de Instancia al tratar al apelante como si fuera CIS y no reconocer que su reclamo está revestido de un profundo interés público.*

*B. Erró el Honorable Tribunal de Instancia al desestimar por inactividad la acción de nivelación presentada por CIS sin antes utilizar otros remedios menos drásticos.*

*C. Erró el Honorable Tribunal de Instancia al no reconsiderar su sentencia desestimatoria cuando el apelante ha demostrado que su alegada inactividad se debió a problemas en el archivo del expediente de este caso.*

*D. Erró el Honorable Tribunal de Instancia al no reconsiderar su sentencia desestimatoria cuando luego que corrigió la situación que motivó su alegada inactividad, el apelante ha demostrado su interés en proseguir su acción de nivelación.*

*E. Erró el Honorable Tribunal de Instancia al no reconsiderar y relevar al apelante de los efectos de su sentencia desestimatoria bajo los parámetros de la Regla 49.2 de las de Procedimiento Civil."*

## II
Por encontrarse estrechamente interrelacionados discutimos conjuntamente todos los señalamientos de error.

La Regla 39.2(b), *supra*, dispone lo siguiente:

*"(b) El juez administrador ordenará la desestimación y archivo de todos los asuntos civiles pendientes en los cuales no se hubiere efectuado trámite alguno por cualquiera de las partes durante los últimos seis meses, a menos que tal inactividad se le justifique oportunamente. Mociones sobre suspensión o transferencia de vista o de prórroga no serán consideradas como un trámite a los fines de esta regla.*

*El juez administrador dictará una orden en todos dichos asuntos, requiriendo a las partes para que, dentro del término de diez (10) días de su notificación por el secretario, expongan por escrito las razones por las cuales no deban desestimarse y archivarse los mismos."*

En los casos archivados por inactividad normalmente se suscita el balance entre, por un lado, la necesidad del tribunal de supervisar su calendario, el interés público en la pronta solución de los casos y el perjuicio al demandado por la dilación y, por otro lado, la política judicial de que los casos se ventilen en los méritos. *Echevarría Jiménez v. Sucn. Pérez Meri,* 123 D.P.R. 664 (1989).

En *Fine Art Wallpaper v. Wolff,* 102 D.P.R. 451 (1974), el Tribunal Supremo enfatizó la labor constitucional e indelegable de los tribunales de primera instancia de velar y garantizar que los procedimientos y asuntos se ventilen sin demora, lo cual constituye la política judicial establecida con miras a lograr una justicia rápida y eficiente.

El referido enfoque judicial se traduce en unas obligaciones que recaen sobre abogados y litigantes, que en sus variadas modalidades, se sintetizan del siguiente modo: diligencia y acción en el reclamo

del derecho a todo lo largo del trámite judicial. *Heftler Const. Co. v. Tribunal Superior,* 103 D.P.R. 844, 846 (1975). Cubre desde la radicación de la demanda, su rápida contestación, el uso de los mecanismos de descubrimiento de prueba y el cumplimiento de las órdenes del tribunal. *Id.*

En *Girard Industries, Corp. v. Tribunal Superior,* 103 D.P.R. 680 (1975), el Tribunal Supremo se expresó de este modo:

*"Es parte de la obligación de jueces y abogados abandonar toda práctica que con el tiempo impuso a nuestro sistema de justicia fama de exasperante lentitud."*

En *Heftler Const. Co. v. Tribunal Superior, supra,* al referirse a las excusas que los litigantes aducen para justificar la inactividad, el Tribunal Supremo indicó que *"[l]a situación er[a] intolerable, pues siempre hay una excusa que se aduce con mayor o menor vehemencia; ningún caso... tiene derecho a la vida eterna ante los tribunales...". Madera Meléndez v. Negrón,* 103 D.P.R. 749 (1975).

En *Secretario del Trabajo v. Mayaguez O.M. Club,* 105 D.P.R. 279 (1976), el Tribunal Supremo expresó lo siguiente:

*"Nuestras decisiones han estado dirigidas a fortalecer el poder de las salas de instancia para aligerar los procedimientos, si necesario fuere, mediante la drástica sanción de decretar la desestimación y archivo de la demanda...".*

En *Ortiz v. Fernós López,* 104 D.P.R. 851 (1976), el Tribunal Supremo determinó que los cambios en representación legal ni conversaciones extrajudiciales entre las partes constituyen gestiones que interrumpen el término de inactividad. Estos pronunciamientos fueron reiterados por el Tribunal Supremo en *Arce v. Club Gallístico de San Juan,* 105 D.P.R. 305 (1976).

Al examinar el trámite del presente caso nos percatamos de que el pleito se refiere a un accidente de automóviles ocurrido el 17 de abril de 1985. La primera parte del pleito terminó mediante una sentencia por estipulación dictada el 1ro. de febrero de 1988.

Además de la lentitud de CIS en general en la tramitación del caso, han ocurrido varios períodos de inactividad de más de seis meses: entre el 5 de junio de 1989 y 7 de junio de 1990; entre el 5 de noviembre de 1990 y 11 de junio de 1991. Dichos períodos de inactividad corresponden al período anterior a la intervención del Comisionado.

Luego de la intervención del Comisionado se han producido los siguientes períodos de inactividad de más de seis meses: entre el 11 de febrero de 1994 (fecha de una conferencia de estado procesal) y 24 de octubre de 1994 (fecha en que New Hampshire volvió a solicitar el archivo del caso); y desde esta última fecha hasta el 6 de julio de 1995 (cuando New Hampshire solicitó que se le notificara al Comisionado la sentencia de archivo de 22 de febrero de 1995).

Del examen del expediente se desprende que tanto CIS como el Comisionado incurrieron en períodos de inactividad de más de seis meses. Esto añadido a la lentitud en el trámite, denotan falta de interés, de parte de CIS y del Comisionado, de que los procedimientos se conduzcan con rapidez. Los problemas señalados por el Comisionado relativos al archivo del expediente en su oficina no excusan una conducta de craso abandono de su reclamación.

Nos plantea el Comisionado que no se le puede atribuir la inacción de CIS que le precedió. En primer lugar, la conducta procesal del Comisionado, con independencia de la de CIS, justifica de por sí la sanción de archivo impuesta. El trámite poco diligente del caso con anterioridad a la intervención del Comisionado, debió haber alertado al mismo en el sentido de que se requería mayor atención y rapidez en el reclamo del derecho que pudiera asistirle, más aún dada la función encomendada al Comisionado por el Código de Seguros; sin embargo, el Comisionado incurrió en una conducta procesal similar a la de CIS. Por otro lado, sería injusto con New Hampshire ignorar todo el trabajo y las molestias en que ésta incurrió durante el período en que CIS tramitó la reclamación de nivelación.

De acuerdo al Comisionado, el tribunal de instancia debió reconsiderar la sentencia de archivo y

relevarlo de los efectos de dicha sentencia bajo los parámetros de la Regla 49.2 de Procedimiento Civil. Al aplicar los principios de dicha Regla el tribunal debe hacer un balance racional y justiciero de todo el expediente para determinar si bajo las circunstancias del caso hubo: (a) error, inadvertencia, sorpresa, o negligencia excusable; (b) no sería equitativo que la sentencia continuara en vigor; (c) o si existe cualquier razón que justifique la concesión de un remedio contra los efectos de una sentencia. Del análisis del expediente es ineludible concluir que ha estado presente un patrón de conducta indicativo de desinterés y falta de diligencia. En contraste con dicho patrón de desidia, New Hampshire siempre desplegó diligencia y respeto a las órdenes del tribunal. No puede utilizarse la Regla 49.2, *supra*, para premiar la conducta carente de diligencia de CIS y del Comisionado en perjuicio de los intereses de la otra parte y la buena administración de la justicia.

Por los fundamentos precedentemente expresados, se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 187

1. La referida transacción se suscribió el 1ro. de febrero de 1988 y se refiere a un accidente automovilístico ocurrido el 17 de abril de 1985. Se dictó sentencia parcial aprobando la referida estipulación el 1ro de febrero de 1988.

2. CIS era aseguradora de la Sucesión de Juan Ortiz Lorenzi, dueña de un camión remolcador o caculo, y New Hampshire era aseguradora del vehículo de arrastre o furgón.