TEXTO COMPLETO DE LA SENTENCIA
En el presente recurso de apelación se solicita se revoque una Sentencia Parcial, emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 30 de junio de 2005 en el caso Daniel J. Dennehy v. Ida María Colón Brenes, Civil Núm. KAC1994-1483 (905).
En dicha Sentencia Parcial, el Tribunal de Primera Instancia ordena a los miembros de la sucesión de Daniel J. Dennehy Ward a pagar a la demandada Ida Colón Brenes la cantidad de $100,000 como crédito de los apartamentos (1202 y 1203) del Condominio Torre Alta, los cuales la parte apelante reclama como privativos. Es de dicha determinación que la parte apelante solicita la revocación de la Sentencia.
I
Las partes en este litigio estuvieron casados desde el 8 de noviembre de 1974 hasta el 26 de julio de 1994, fecha en que se dicto Sentencia de Divorcio. El 7 de octubre de 1994, el Sr. Daniel Dennehy Ward presentó *1061 demanda de liquidación de bienes gananciales, dando inicio al litigio ante nos. En atención a variadas y constantes controversias relacionadas con los bienes y la manera en que debían ser divididos, el Tribunal ordenó la designación de una Comisionada Especial para que atendiera las controversias. El 3 de diciembre de 2001, la Comisionada Especial, Leda. Carmen Celinda Ríos Rivera, presentó su informe que incluia un historial del caso, Determinaciones de Hechos, Conclusiones de Derecho y Sentencia Recomendada. El Tribunal procedió a decretar la disolución de la comunidad de bienes objeto del pleito y adjudicar los bienes muebles e inmuebles. Conforme a esta adjudicación y basándose en las Determinaciones de Hechos de la Comisionada Especial, el Tribunal procedió a reconocer un crédito a favor de la sociedad legal de gananciales, con respecto a las ganancias obtenidas en la venta de dos apartamentos, 1202 y 1203 del Condominio Torre Alta en Hato Rey, los cuales le fueron adjudicados al demandante Daniel J. Dennehy. El acápite núm. 4 de la Sentencia Parcial de 30 de junio de 2005, a la página 4, dispone:

4)”Se adjudica al demandante los apartamentos 1202 y 1203 del Condominio Torre Alta de Hato Rey, una vez satisfaga los créditos gananciales de la demandada. Los créditos gananciales en los $200,000 gananciales obtenidos de la venta de los apartamentos, ascienden a $100,000 para cada parte. Se ordena a la sucesión de Daniel J. Dennehy pagar a la demandada $100,000 tan pronto obtenga autorización judicial en la vista de 6 de diciembre de 2005para culminar la transacción acordada”.

A su vez, sobre dichos apartamentos, se relacionan varias determinaciones de hechos del Informe de la Comisionada Especial, adoptados por el Tribunal:
Determinación de Hecho Núm. 7

“Las partes se casaron poco después del demandante haber comprado dos (2) apartamentos, los números 1202 y 1203 en el Condominio Torre Alta en Hato Rey, Puerto Rico. Las hipotecas, gastos de mantenimiento, reparaciones mayores y menores y mejoras tienen la presunción de haber sido sufragadas por la sociedad legal de gananciales durante el matrimonio. No se ha presentado prueba que demuestre lo contrario”. 

Determinación de Hecho Núm. 8

“Las partes se separaron el 28 de enero de 1993. La demandada permaneció en el apartamento que habían sido unidos en uno para acomodar los hijos, hasta pocos días antes del 20 de diciembre de 1995, fecha en que el Tribunal decidió que debía mudarse. Pagó la suma de $11,733.00 por arrendamiento por el tiempo en que los usó por haber sido los apartamentos en su origen privativos. Quedaron pendientes de adjudicación sus créditos gananciales. El demandado se mudó al apartamento (dos unidos) y posteriormente los vendió por separado, sin rendir cuentas al Tribunal, ni a la demandada. ” 

Determinación de Hecho Núm. 45

“Cuando las partes se separaron, el demandante no continuó los pagos de deudas, ni de hipotecas de los apartamentos. Ella sufragó todos los pagos de deudas, y los de hipoteca, mantenimiento y reparaciones de los apartamentos hasta que los desalojó. Probó a satisfacción del Tribunal que se hizo cargo de pagar todo durante siete años. Dejó los apartamentos en buenas condiciones. ” 

Determinación de Hecho Núm. 46

“Entre los arreglos de los apartamentos que sufragó la demandada estuvieron arreglo eléctrico cuando explotó la caja de interruptores, remoción de cinco panales de abejas y arreglo de rejas de balcón que estaban flojas. ” 

*1062 Determinación de Hecho Núm. 47

“El demandante no presentó evidencia de daños y su declaración de que ella causó daños a los apartamentos no nos mereció ninguna credibilidad” 

Determinación de Hecho Núm. 51

“El demandante admitió haber vendido los apartamentos en que había vivido la pareja cuando casada y no haber contabilizado los pagos gananciales a las hipotecas. Retuvo el producto total de las compraventas. 

Con respecto a las Conclusiones de Derecho del Informe de la Comisionada Especial, relacionadas con los referidos apartamentos, el Tribunal a quo adoptó los siguientes:
“Todas aquellas transacciones del señor Dennehy durante la vigencia del matrimonio, o sea, desde el 8 de noviembre de 1974 hasta que se divorciaron el 2 de agosto de 1994, se reputan gananciales mientras no se pruebe que pertenecen privativamente al marido o ala mujer. ” Art. 1307 del c.c. 31 L.P.R.A., sec. 3647.

Hemos determinado, Determinaciones de Hechos Núm. 8 al 12, que el Testimonio del Señor Dennehy y la prueba documental que presentó no nos merecía crédito. Resolvemos que el demandante no rebatió la presunción de que los frutos percibidos por las transacciones a que se refieren dichas determinaciones son gananciales. Era a dicha parte a la que correspondía establecer tal carácter privativo ”. 

Y finalmente el referido informe concluye:

“Las hipotecas, gastos de mantenimiento, reparaciones mayores, menores y mejoras de los apartamentos 1202 y 1203 en el penthouse del Condominio Torre Alta, ya vendidos por el demandante, generaron unos créditos gananciales para la demandada. El demandante ya recibió su participación privativa y la ganancial . 

II
Inconforme con las determinaciones de hechos y conclusiones de derecho, tanto del Informe de la Comisionada Especial, como de la Sentencia Parcial del 30 de junio de 2005, en lo que respecta a los créditos gananciales reconocidos a la demandada derivados de la venta de los dos apartamentos 1202 y 1203 del Condominio Torre Alta, la parte apelante acude ante nos planteando el siguiente señalamiento de error:
“Erró el Tribunal de Primera Instancia en la sentencia emitida al ordenar a los comparecientes miembros de la Sucesión de Daniel J. Dennehy Ward a pagar a la demandada Sra. Ida Colón Brenes la cantidad de $100,000 como crédito por los apartamentos 1202 y 1203 del Condominio Torre Alta (privativos del finado Dennehy) todavez que no procede tal crédito y tampoco hay apoyo alguno en evidencia para determinar dicha cantidad. Es decir, no se desfiló prueba alguna ni se determinó nada por la Comisionada Especial designada en el caso, en cuanto a la cantidad que como crédito le pudiera corresponder a la demandada Ida Colón en torno a los referidos apartamentos de carácter privativo”.
III
Examinados los autos del caso, la transcripción de la prueba oral estipulada por las partes y los alegatos de las partes, procedemos a resolver:
La sociedad de gananciales es el régimen matrimonial favorecido por nuestro ordenamiento jurídico. Está reglamentado por los Artículos 1295 al 1326 del Código Civil, 31 L.P.R.A. sees. 3621 a 3701, y supletoriamente por las disposiciones del contrato de sociedad, Artículos 1556 al 1599 del Código Civil, 31 L.P. *1063 R.A. secs. 4311 a 4399. Este régimen es una entidad separada y distinta de los cónyuges que la componen. Universal Funding Corporation, etc. v. Registrador 133 D.P.R. 549 (1993), y Cruz Viera v. Registrador, 118 D P.R. 911, 914 (1987).
Durante la existencia de la sociedad legal de gananciales, los cónyuges son codueños y coadministradores de la totalidad de patrimonio matrimonial sin distinción de cuotas. La masa ganancial está compuesta por bienes y derechos, que están directa e indirectamente afectos al levantamiento de las cargas familiares, son de titularidad conjunta de los cónyuges sin especial atribución de cuotas. Montalván Ruiz v. Rodríguez Navarro, 2004 J.T.S. 48, 161 D.P.R. _.
El Tribunal Supremo ha mencionado en varias ocasiones que son varias las características de la sociedad de gananciales, estas son: (1) como regla general, se forma por el hecho del matrimonio, aunque puede constituirse expresamente en capitulaciones; (b) sólo puede establecerse entre marido y mujer; (c) comienza y finaliza únicamente cuando se da alguna de las circunstancias contempladas en la legislación; (d) una vez celebrado el matrimonio, los contrayentes no pueden modificar el régimen económico; (e) los cónyuges pueden renunciar a su participación conforme a las restricciones dispuestas en la ley; (f) los bienes gananciales se dividen por mitad, indistintamente del monto de las aportaciones de cada cónyuge y aunque alguno de ellos nada haya aportado al caudal común. Pujols Betancourt v. Gordón Menéndez, 2003 J.T.S. 155, 160 D.P.R. _, e International Charter Mortgage Corp. v. Registrador, 110 D.P.R. 862, 865-866 (1981). Contraído el matrimonio bajo el régimen de la sociedad de gananciales, se entiende que la gestión económica de cada cónyuge se hace para beneficio de la sociedad y no para beneficio individual. Id\ Raúl Serrano Geyls, Derecho de Familia de Puerto Rico y legislación comparada, Vol. I., Universidad Interamericana de Puerto Rico, 1997, página 338. No obstante, el régimen de gananciales prevaleciente en nuestro ordenamiento reconoce, como axioma principal, el patrimonio individual de los cónyuges separado del de la sociedad. Id; García v. Montero Saldaña, 107 D.P.R. 319, 335 (1978). Una vez disuelto el matrimonio, concluye la sociedad de gananciales y desde ese momento es que nace una comunidad de bienes.
En cuanto a los bienes pertenecientes a la sociedad, se reputarán gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente a alguno de los cónyuges. Artículo 1307, 31 L.P.R.A., see. 3647. Quiere esto decir, que cuando se liquide una sociedad, salvo que se pruebe lo contrario, los bienes que la componen serán considerados gananciales. Esta es una presunción controvertible que persigue resolver las controversias que frecuentemente se suscitan sobre la naturaleza de los bienes, Pujols Betancourt v. Gordon Menéndez, supra, y Espéndez v. Vda. de Espéndez, 85 D.P.R. 437, 441-442 (1962). Por ello, quien sostenga que la naturaleza del bien es privativa, tiene el peso de la prueba. Id; Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664, 681 (1989).
Según lo dispone el Artículo 1301 del Código Civil, 31 L.P.R.A., see. 3641, serán gananciales:

“1. Los bienes adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno sólo de los esposos.

2. Los bienes obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos.

3. Los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges, incluidos los dividendos que se cobren periódicamente de las acciones privativas. ”31 L.P.R.A., see. 3641.
También, pertenecerán a la sociedad legal de gananciales, los frutos, pensiones e intereses devengados durante el matrimonio que provengan del usufructo o pensión perpetua de uno de los cónyuges aunque dicho derecho sea privativo. Artículo 1303, 31 L.P.R.A., 31 L.P.R.A., see. 3643. Además se considerará ganancial las *1064 expensas útiles o mejoras hechas a los bienes privativos de los cónyuges, mediante anticipaciones o aportaciones de la sociedad por la industria del marido o de la mujer. Artículo 1304, 31 L.P.R.A., see. 3644. Igualmente serán los edificios construidos durante el matrimonio en suelo propio de uno de los cónyuges, abonándose el valor del suelo al cónyuge a quien pertenezca. Id.
Se reputarán privativos, conforme al Artículo 1299 del Código Civil, 31 L.P.R.A., see. 3631, todos los bienes de cada uno de los cónyuges:

“1. Que aporte al matrimonio como de su pertenencia.

2. Que adquieran durante él, por título lucrativo, sea por donación, legado o herencia.

3. Adquiridos por derecho de retracto o por permuta con otros bienes, pertenecientes a uno sólo de los cónyuges.

4. Comprados con dinero exclusivo de la mujer o del marido. ”31 L.P.R.A., see. 3631.
Por medio de la jurisprudencia, el Tribunal Supremo ha establecido que también se considerarán privativos los siguientes bienes: los títulos profesionales aunque lo hubiese obtenido durante el matrimonio con ayuda corriente o extraordinaria del otro cónyuge, Díaz v. Alcala, 140 D.P.R. 959 (1996); las acciones o dividendos corporativos pagados en nuevas acciones, López Martínez v. Yordán, 104 D.P.R., 594 (1976); las aportaciones al seguro social federal, Vega Rivera v. Soto Silva, Opinión del 8 de marzo de 2005, 2005 J.T.S. 31, 164 D.P.R. _, contrato de seguro de vida y los derechos que incluya, excepto las primas pagadas durante la vigencia del matrimonio, por lo que se le dará un crédito a la sociedad, Pilot Life Ins., Co. v. Crespo Martínez, 136 D.P.R., 624 (1994); y cualquier indemnización por daños y perjuicios que reciba uno sólo de los cónyuges, Robles Ostolaza v. U.P.R., 96 D.P.R., 583 (1968).
Respecto a los bienes privativos, el profesor Serrano Geyls en su libro de Derecho de Familia de Puerto Rico, supra, señala que éstos podrían aumentar de valor durante el matrimonio. En dicha situación, “la regla ha sido que el aumento de valor, producido con anticipos de la sociedad ganancial o por la industria o trabajo de ambos o de cualquiera de los cónyuges, pertenece a la sociedad”. Id. Cuando la sociedad sea liquidada, se le dará un crédito por lo que invirtió la sociedad en el bien privativo.
Respecto a dicho aspecto mencionado en el párrafo anterior, el Tribunal Supremo ha señalado que la procedencia privativa de un inmueble no pierde tal carácter por el hecho de invertirse posteriormente fondos pertenecientes a la sociedad legal de gananciales. García v. Montero Saldaña, supra. Por tanto, un bien privativo no adviene ganancial por la mera inversión que haya hecho en él la sociedad legal de gananciales.
IV
Alegan los apelantes en su señalamiento de error que no procede el crédito de $100,000 que se les obliga a pagar a los miembros de la Sucesión Dennehy Ward a la Sra. Ida Colón Brenes, por los apartamentos 1202 y 1203 del Condominio Torre Alta (privativos del finado Dennehy). En otras palabras, siendo dichos apartamentos de carácter privativo, no procedía que a la venta de éstos se le reconociera a la demandada apelada un crédito de $100,00 por éstos. A la luz de la doctrina previamente reseñada sobre bienes gananciales y privativos y su jurisprudencia interpretativa aplicada a la situación de hechos en el caso ante nos, resolvemos la cuestión planteada.
No hay controversia en cuanto a que las partes litigantes estuvieron casados bajo el régimen de bienes gananciales y que ésta se extinguió cuando la sentencia de divorcio advino final y firme. En tal virtud, el ingreso obtenido producto del trabajo, sueldo o industria de uno o ambos cónyuges, vigente el matrimonio, se *1065 reputa ganancial, sujeto a la co-administración e igualdad de acceso de ambos cónyuges. Art. 1301, 31 L.P.R. A., see. 3641. No hay controversia sobre la naturaleza privativa de los dos apartamentos (1202 y 1203, Condominio Torre Alta, Hato Rey), en los cuales el matrimonio Dennehy Colón constituyó su hogar conyugal. Tales inmuebles fueron adquiridos por el Sr. Dennehy antes de casarse. En tal virtud se reputan privativos. Art. 1299, Código Civil, 31 L.P.R.A., see. 3631, supra.
La prueba demostró que los pagos mensuales de las hipotecas de ambos apartamentos se sufragaron con dinero de la sociedad legal de gananciales. No obstante, la procedencia privativa de los referidos inmuebles no perdió tal carácter por el hecho de invertirse posteriormente fondos pertenecientes a la sociedad legal de gananciales. García v. Montero Saldaña, supra. Por ello, con justificada razón, el Tribunal a quo reconoció como privativos de Daniel J. Dennehy ambos inmuebles en su Sentencia Parcial. Sólo que condicionó su adjudicación a que se satisficiera por el demandante los créditos gananciales en el fruto de la venta de ambos apartamentos.
A esos efectos, señaló en el acápite 4, página 4 de la Sentencia Parcial lo siguiente:

“Los créditos gananciales en los 200,000 gananciales obtenidos de la venta de los apartamentos, ascienden a $100,000 para cada parte. Se ordena a la sucesión de Daniel J. Dennehy, pagar a la demandada $100,000, tan pronto obtenga autorización judicial en la vista de 6 de diciembre de 2005, para culminar la transacción acordada ”. 

Este último aspecto de la autorización judicial se debía a que había miembros de la sucesión Dennehy que eran menores de edad y se celebraría una vista de autorización judicial sobre bienes de la sucesión en que éstos tenían interés. Por otro, lado el fruto de la venta de los apartamentos privativos, que según el acápite núm. 4 de la Sentencia Parcial previamente reseñado, ascendió a $200,000, se reputan gananciales. Es de esa cantidad que el Tribunal a quo le reconoce $100,000 a la parte demandada apelada. El Código Civil establece que “el fruto de la venta de bienes privativos percibidos durante el matrimonio, se reputan gananciales”. El artículo 1301, 31 L.P.R.A., see. 3641, señala en su parte pertinente, que son bienes gananciales:
“(3) Los frutos, rentas, o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges”. La jurisprudencia ha definido el concepto “fruto” de la manera siguiente:
“Fruto es aquel producto derivado de la cosa principal separable de la misma, sin disminuirla y sin afectar su destino económico que se percibe con relativa periodicidad.” López Martínez v. Yordán, 104 D.P.R. 595, 596 (1976).
En la situación de hechos ante nos, tenemos dos apartamentos privativos en su origen, que fueron pagados durante la existencia del matrimonio durante casi diecinueve años, con dinero que se presume proveniente de la sociedad legal de gananciales. Ello es así porque los cónyuges, vigente la sociedad legal de gananciales, no pueden tener cuotas separadas e independientes, sino que es la sociedad la dueña de los bienes que la componen. Cruz Viera v. Registrador, 118 D.P.R. 911 (1987).
En adición, nuestro Código Civil claramente designa bienes gananciales, los bienes habidos durante el matrimonio. Dispone el Artículo 1307, 31 L.P.R.A., see. 367, “se reputan gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente al marido o a la mujer. Quien rebata tal presunción, reclamando que determinados bienes habidos en matrimonio son privativos, tiene que destruir esa presunción mediante preponderancia de la prueba. ” Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664 (1989); The Commonwealth Ins. Co. v. Cía. de Fomento Industrial, 123 D.P.R., 150 (1989).
*1066 La Comisionada Especial, en su informe de 3 de diciembre de 2001 y el Tribunal de Primera Instancia en su Sentencia Parcial de 30 de junio de 2005, determinaron que el demandante-apelante no rebatió tal presunción presentando prueba que demostrara lo contrario. 
En el caso ante nos, los pagos realizados durante la vigencia del matrimonio Dennehy-Colón para las mensualidades de las hipotecas que gravaban dichos inmuebles, eran sufragados con dinero proveniente de la sociedad legal de gananciales. Durante la vista en su fondo del caso, el demandante-apelante Sr. Daniel J. Dennehy, aceptó que todos los pagos relacionados con los referidos apartamentos 1202 y 1203 del Condominio Torre Alta, al igual que otros gastos del hogar, se sufragaban con dinero proveniente de una de sus corporaciones, a saber, Phoenix Incorporado. A continuación, un intercambio de preguntas y respuestas al testigo Daniel J. Dennehy:
“Sra. Juez - Si usted se reafirma en estos momentos que Phoenix Incorporado, que a través de ella era que se pagaban los gastos del, del hogar.

Testigo — Sí.

Leda. Rodríguez Valledor - O key, ¿y los gastos del apartamento como dice la declaración jurada?

Testigo - Eso es correcto.

P-O key. Y le hago una pregunta.

Sra. Juez- Servicio doméstico es lo correcto, servicio doméstico.

Leda. Rodríguez Vallador - Ah. Sí.

Sra. Juez - El pago de los apartamentos.

Leda. Rodríguez Vallador - No, dos apartamentos.

Sra. Juez - Sí, porque eran dos mantenimientos.

Leda. Rodríguez Vallador - Si, si con mantenimiento y todo.

Sra. Juez - ¿Y el pago de los dos mantenimientos de los penthouses, las hipotecas?

Con la boca tiene que ser porque se está gravando.

Testigo - Yes.

Sra. Juez - ¿La luz, el agua, teléfono?

Testigo - Eso es correcto.'” 
Este testimonio fue corroborado mediante testimonio de la demandada-apelada IDA COLÓN B RENES en la vista en su fondo del caso. Esta testificó que una de las hipotecas la tenía Santander Mortgage Corp. y se pagaban $155.53. No pudo precisar si era el PH 1 o PH 2. También declaró que de la cuenta de la Corporación Phoenix, se pagaba la hipoteca de dichos apartamentos. Durante la vista en su fondo se estipuló que los pagos provenían del Banco de Ponce de Phoenix, Inc. También se estipuló que la Sra. Ida *1067 Colón de Dennehy firmaba los cheques de la Corporación Phoenix Inc. Siendo tales pagos de las hipotecas de los apartamentos de naturaleza ganancial, corresponde un crédito de la mitad de tales pagos a favor de la demandada-apelada durante gran parte del término de vigencia del matrimonio, a saber desde el 8 de noviembre de 1974 en que contrajeron nupcias hasta el 28 de enero de 1993, fecha en que se separaron. En adición, corresponde reconocerle un crédito a dicha parte por el tiempo en que absorbió el pago de dichas hipotecas, sola, sin la colaboración de su ex esposo, después del divorcio. (Véase Determinación de Hechos Núm. 45, Informe de Comisionada Especial). Esta circunstancia se extendió desde el 26 de julio de 1994, fecha en que se divorció hasta que la demandada-apelada abandonó los apartamentos por decisión del Tribunal, el 20 de diciembre de 1995. (Véase Determinación de Hechos Núm. 8, Informe de Comisionada Especial). 
Si bien es cierto que el Informe Especial de la Comisionada no precisó la cuantía pagada durante los casi 19 años que se pagó las hipotecas de los apartamentos con dinero ganancial y el año y medio que se pagaron con dinero privativo de la demandada apelada, no es menos cierto que el Tribunal a quo entendió que un cómputo razonable y justo lo constituía reconocerle a la demandada apelada cien mil dólares ($100,000), que es la mitad del valor de los créditos gananciales de $200,000 obtenidos en la venta de los dos apartamentos, los cuales el demandante apelante vendió mientras el litigio estaba desarrollándose, sin rendir cuentas al Tribunal ni a la parte demandada. [23]
El demandante admitió haber vendido los apartamentos que había vivido la pareja cuando casada y no haber contabilizado los pagos gananciales a las hipotecas. Retuvo el producto total de las Compraventas. 
En adición, el Tribunal a quo consideró que la apelada tenía derecho al referido crédito, por su participación, labor y ayuda al demandante-apelante durante el matrimonio. Esto en virtud de la totalidad de los hechos y circunstancias particulares de este caso. A esos efectos, es pertinente reseñar algunas determinaciones de hechos del Informe de la Comisionada Especial, que el Tribunal hizo suyos en su Sentencia Parcial:
28. “El Señor Daniel Dennehy administraba grandes sumas de dinero en efectivo que no se contabilizaban. La demandada administraba nada más que la mensualidad que él le daba para gastos del hogar, que era de $400 a $700 mensuales”. 
43. “Las tareas de la señora Colón incluyeron recoger niños en la escuela; cuido de niños y atención de sus estudios y visitas, limpieza del hogar (un enorme apartamento confeccionado de dos que se unieron), labores de cocina, lavado, planchado, compras, diligencias, actividades sociales y entretenimiento que bajo las circunstancias específicas de este caso, consideramos son actividades mercadeables.”) 
44. “El valor económico de los servicios antes expuestos de la demandada no fueron considerados en ningún escrito, o en el testimonio oral del demandante sobre la división y distribución de bienes del matrimonio. La demandada tiene derecho a que se consideren y se le contabilicen y acrediten a su favor”. 
45. “Cuando las partes se separaron, el demandante no continuó los pagos de deudas, ni hipotecas de los apartamentos. Ella sufragó todos los pagos de deudas y los de hipoteca, mantenimiento y reparaciones de los apartamentos hasta que los desalojó. Probó a satisfacción del Tribunal que se hizo cargo de pagar todo durante siete años. Dejó los apartamentos en buenas condiciones”. 
Finalmente reproducimos una expresión contenida en el Informe de la Comisionada Especial que explica de forma clara el derecho a la participación ganancial reconocida por el Tribunal de Primera Instancia:

“Hemos determinado, Determinaciones de Hechos Núm. 8 al 12, que el testimonio del señor Dennehy y la prueba documental que presentó no nos merecía crédito. Resolvemos que el demandante no rebatió la presunción de que los frutos percibidos por las transacciones a que se refieren dichas determinaciones son 
*1068
gananciales. Era a dicha parte a la que correspondía establecer tal carácter privativo. Su testimonio en beneficio propio, pero lleno de evasiones, nos mueve a concluir que tanto antes como después del divorcio ha tratado de colocar a su ex esposa en un estado de indefensión pecuniaria, sin reconocerle ningún derecho a los cuantiosos bienes que recibió durante el matrimonio. Todo ello, a pesar de los esfuerzos, labores, sacrificios que por todos esos años realizó la demandada Ida Colón Brenes. Véase por vía de ejemplo, las Determinaciones de Hechos Núm. 25, 41, 42, 43 y 44.

La actividad revanchista del señor Dennehy llega al extremo de, por un lado, atribuirse como privativo todos los ingresos que obtuvo durante el matrimonio, sin ninguna consideración a las gestiones de su entonces esposa, que entre otras cosas, le ayudó a criar y educar a sus hijos y por otro lado, tratar de que se trate como una deuda ganancial la que se le corresponde a la Sociedad Especial Denber S.E. (Determinación de Hecho Núm. 14), y el cobrarle a su ex esposa la suma de $5,000.00 mensuales por gastos de manutención mientras estuvieron casados. Este último reclamo es improcedente bajo los hechos presentes y es ajeno a las obligaciones fijadas en el Art. 1308 del Código Civil, 31 L.P.R.A. 3661.

Bajo los hechos presentes, este trato desigual no puede ser avalado por los tribunales. No solamente tiene connotaciones de trato discriminatorio contra una esposa, por razón de su sexo, sino que da al traste con la protección que estamos obligados a darle a todos aquellos en la misma situación. Aunque los planteamientos y la situación jurídica es distinta, son de estricta aplicación a los hechos aquí presentes, los señalamientos de la Juez Asociada, Naveira de Rodón en su Opinión Disidente en Díaz v. Alcalá, 140 D.P.R. 959, sobre los problemas constitucionales que ocasiona el trato desigual que se le da a la mujer en la división de bienes gananciales y responsabilidades de los ex cónyuges. Como bien se apunta en dicha Opinión, citando a Domingo Domínguez Maldonado v. E.L.A., Op. del 9 de febrero de 1995, 95 JTS 16, que aunque las tareas en el hogar no son valoradas en términos económicos, los tribunales no pueden ignorar que dichas tareas y servicios son vitales para la salud del régimen económico de un matrimonio y que deben ser tomadas en cuenta al hacer decisiones sobre la división y distribución de bienes de un matrimonio.

Es también de gran utilidad y fuerza persuasiva las expresiones del Juez Asociado Fuster Berlingeri en dicho caso de que en casos extremos en los cuales es clara la patente injusticia sufrida por un cónyuge, se justifica apartarse de los fundamentales supuestos normativos que rigen y sostienen la institución matrimonial. Entendemos que el caso ante nos es uno de aquellos excepcionales en que, como señala dicha Opinión Concurrente, uno de los cónyuges aquí, el señor Dennehy, explota la comunidad de bienes para su exclusivo beneficio personal, con una actitud carente de la solidaridad que le da ala unión matrimonial su singular significado. Como allí se señala: no podemos validar la actitud de un cónyuge que abuse clara y crudamente de la buena fe del otro.

Debemos, además, reconocer a la señora Colón un valor pecuniario por los cuidados y la atención que le brindó a los hijos de su ex esposo, Mundo v. Cervoni, 115 D.P.R. 422 (1984).

Por ser claramente aplicables y armonizables, estamos obligados a proteger los derechos de la demandada, aunque sea en una forma más limitada de la merecida 
Aclarada la procedencia en derecho del crédito de $100,000 otorgado por el tribunal a quo a la demandada apelada, procede abordar el aspecto del señalamiento de error de los apelantes que se refiere a que no hubo prueba suficiente ante la comisionada Especial o ante el tribunal que justificara tal cuantía de $100,000 de crédito. Este señalamiento apunta a que el tribunal a quo incidió en la apreciación de la prueba. Somos de opinión que el Informe de la Comisionada Especial y la Sentencia Parcial que lo adopta son lo suficientemente explícitos en exponer los fundamentos para su determinación, los cuales ya hemos reseñado en esta Sentencia. La valoración de la participación ganancial de la demandada apelada tiene su fundamento en la credibilidad que mereció la prueba oral y testifical desfilada. Se fundamenta en la participación ganancial en los frutos de la *1069 venta de los dos apartamentos ($200,000 gananciales), el pago de las dos hipotecas de los apartamentos 1202 y 1203 del condominio Torre Alta, con dinero ganancial durante casi diecinueve (19) años, (8 de noviembre de 1974, fecha en que contrajeron matrimonio hasta el 28 de enero de 1993, fecha en que se separaron), el pago de las referidas hipotecas, más los gastos de reparaciones mayores, menores y mejoras correspondientes a dichos apartamentos durante un año y medio, con dinero privativo de ella, (26 de julio de 1994 en que se divorciaron hasta el 20 de diciembre de 1995 en que abandonó los apartamentos). 
Por último el valor económico que le valió al Tribunal a quo las labores del hogar que realizaba la demandada-apelada a favor del demandante-apelante; como el cuido de sus niños, atención en sus estudios y visitas, limpieza del hogar, labores de cocina, lavado, planchado, compras, diligencias, actividades sociales y de entretenimiento.
Finalmente, es un principio jurídico sostenido el que postula que toda sentencia está acompañada de una presunción de corrección. Vargas v. González, 149 D.P.R. 859 (1999); Cortés Piñeiro v. Sucesión A. Cortés, 83 D.P.R. 685 (1961). Dicho precepto va unido al hecho de que los jueces de instancia son quienes están en mejor posición de aquilatar la prueba. Por tal razón la apreciación que éstos hagan de la evidencia desfilada en los procedimientos judiciales ante sí merece gran respeto y deferencia por parte de los foros apelativos. Pueblo v. Miranda Ortiz, 117 D.P.R. 188 (1986).
Como corolario de los postulados antes reseñados, se ha resuelto que en ausencia de error manifiesto, prejuicio, parcialidad o pasión, los foros apelativos no intervendrán con dicha apreciación de la prueba. Benitez Guzmán v. García Merced, 126 D.P.R. 302 (1990); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987); Pueblo v. Miranda Ortiz, supra; Valencia, Ex Parte, supra; Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985). Así, pues, este Tribunal no debe intervenir en las determinaciones de hechos de los foros de instancia, salvo en las circunstancias antes mencionadas, sustituyendo así el criterio del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su demeanor. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172 (1985); Pérez Cruz v. Hospital La Concepción, 115 D.P.R. 533 (1984); Vélez v. Secretario de Justicia, 115 D.P.R. 533 (1984); Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R 357 (1982).
En el caso de autos, no encontramos error manifiesto, prejuicio, parcialidad o pasión, en las actuaciones del Tribunal de Primera Instancia al tomar su decisión, por lo que no habremos de intervenir con la apreciación de la prueba que tuvo a bien hacer dicho Tribunal.
Por los fundamentos que anteceden, se confirma la Sentencia Apelada.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Lie. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 50
1. El Demandante Daniel J. Dennehy Ward, se mantuvo activo como parte litigante en el presente pleito, hasta su fallecimiento el 13 de octubre de 2004. Su Albacea Testamentario, Daniel J. Dennehy Kelly, solicitó la sustitución de su padre fallecido por los miembros de su sucesión, lo cual fue aprobado por el Tribunal.
2. Apéndice 7, páginas 25-41.
3. Apéndice 7, página 28, parte apelante.
*1070 4. Apéndice 7, página 28, parte apelante.
5. Apéndice 7, página 35, parte apelante.
6. Apéndice 7, página 35, parte apelante.
7. Apéndice 7, página 35, parte apelante.
8. Apéndice 7, página 35, parte apelada.
9. Apéndice 7, página 36, parte apelante.
10. Apéndice 7, página 38, parte apelante.
11. Apéndice 7, página 28, Informe de la Comisionada Especial, Inciso 7.
12. Apéndice 25, página 42, parte apelante.
13. Apéndice 25, página 140, parte apelante.
14. Apéndice 7, página 28, parte apelante; Apéndice 25, página 141, parte apelante.
15. Transcripción de Evidencia, en adelante T.E. página 52,53, Vista en su fondo, 10 de marzo de 2000.
16. T.E. página 102, Vista en su fondo, 10 de marzo de 2000.
17. T.E. página 103, Vista en su fondo, 10 de marzo de 2000.
18. T.E. página 103, Vista en su fondo, 10 de marzo de 2000.
19. T.E. página 105, Vista en su fondo, 10 de marzo de 2000.
20. T.E. página 107, Vista en su fondo, 10 de marzo de 2000.
21. Apéndice 7, página 28, parte apelante.
22. Apéndice 7, página 28, parte apelante.
23. Acápite Núm. 4, Sentencia Parcial de 30 de junio de 2005, página 4, apéndice 25, página 142, parte apelante; Determinación de Hechos Num. 8, Informe de Comisionada Especial, apéndice 7, página 28, parte apelante.
24. Apéndice 7, página 35, parte apelante.
25. Apéndice 7, página 32, parte apelante.
26. Apéndice 7, página 34, parte apelante.
27. Apéndice 7, página 34, parte apelante.
28. Apéndice 7, página 34, parte apelante.
29. Apéndice 7, páginas 36, 37, parte apelante.
30. La demandada abandonó el apartamento por mandato judicial de 20 de diciembre de 1995, pagando la suma de $11,733.00 por concepto de arrendamiento por el tiempo que ocupó éstos por ser privativos del demandante-apelante.