Voto particular disidente en reconsideración emitido por la
Juez Asociada Señora Rodríguez Rodríguez, al que se unen el Juez Presidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta.
Dos cosas advertíamos en la opinión disidente que suscribimos en ocasión de publicarse la opinión del Tribunal en el caso Quiñones Reyes v. Registrador, 175 D.P.R. 861 (2009). Primero, que al reconocerle a un socio minoritario de una sociedad la potestad especial de acudir individual *2 mente al Registro de la Propiedad a anotar preventivamente una demanda sin una previa intervención judicial, estábamos modificando la norma que establecimos en Linden Development v. De Jesús-Ramírez, 175 D.P.R. 647 (2009). Indicamos que la postura adoptada se asumía “al margen del contenido del contrato de la sociedad” y que, además, chocaba con nuestros dictámenes anteriores, en los cuales establecimos que la sociedad especial y los miembros que la componen tienen personalidades jurídicas distintas. Como segunda reflexión, apuntábamos que el dictamen de la mayoría resucitaba la figura del lis pendens y los efectos perniciosos que ésta acarrea para el tráfico jurídico, así como para las partes perjudicadas por la anotación, a las que no se les brinda una oportunidad de ser oídas.
Si erróneo fue nuestro dictamen original, más grave aún es la actuación de la Mayoría hoy al negarle al titular de la finca gravada con la anotación preventiva la oportunidad de ser oído, lo que ofende las normas más fundamentales de trato justo.
En reconsideración, han comparecido ante nosotros el Registrador de la Propiedad y Punta del Mar Beach Village III, Inc. (Beach Village III). Esta última ha presentado dos mociones interrelacionadas. La primera de ellas es una segunda moción para su intervención, en la cual nos señala que el 5 de junio de 2007 había presentado una moción de intervención en este caso por ser la titular registral de la finca objeto del recurso gubernativo, pero que su petición fue denegada el 9 de diciembre de 2008. Ahora nos plantea que ante el dictamen del Tribunal que grava su propiedad, es imprescindible que se le conceda el derecho a ser oída, pues se le ha afectado un interés propietario sin el debido proceso de ley. En esta moción nos informa también que la anotación preventiva tiene el efecto de paralizar el desarrollo que lleva a cabo en su finca. Además, indica que la actuación del Tribunal incide sobre los derechos del aeree *3 dor hipotecario, el Banco Bilbao Vizcaya Argentaría, quien proveyera el financiamiento para el desarrollo y quien tampoco ha tenido oportunidad de que se le escuche. En la segunda moción presentada se abunda en los argumentos jurídicos por los cuales se le debe permitir intervenir en este caso.
Los escritos presentados por Beach Village III ejemplifican lo que advertíamos en nuestra disidencia: que se actuaba al margen del contenido del contrato de sociedad. Se nos señala que en la Escritura Núm. 387 sobre Constitución de la Sociedad Especial de Punta del Mar Beach Village, SE, los socios designaron, por común acuerdo, a Punta del Mar, Inc. como socio administrador para dirigir y administrar los negocios de Punta del Mar Beach Village, SE. Punta del Mar, Inc. es una corporación que se rige por la Ley General de Corporaciones de 1995 (14 L.P.R.A. see. 2601 et seq.). Específicamente, en la Cl. 9.7 de la escritura de constitución se acordó la siguiente limitación para actuar en nombre de la sociedad especial:
El Socio Especial y/o los Socios Especiales que tengan o pudiera tener la Sociedad Especial en el futuro no tomarán parte en la administración de los negocios de la Sociedad Especial ni llevarán a cabo ningún negocio a favor o en nombre de la Sociedad Especial, y no tendrán poder para obligar de modo alguno a la Sociedad Especial, excepto cuando actúen como oficiales y/o bajo la autorización del Socio Especial Administrador o en aquellos casos específicos que se proveen en esta escritura. (Énfasis nuestro.) Apéndice del Recurso gubernativo, pág. 47.
Evidentemente, los socios Punta del Mar Beach Village, SE pactaron que quien únicamente estaba facultado para actuar a nombre de la sociedad especial era el socio especial administrador quien, como dijimos, es Punta del Mar, Inc. Es decir, por común acuerdo y voluntariamente, el Sr. Evaristo Quiñones acordó que sería Punta del Mar, Inc. quien administraría los negocios de la sociedad especial. Por ello es que, verdaderamente, éste no tiene legitimación *4 para comparecer al Registro de la Propiedad en representación de Punta del Mar Beach Village, SE para reclamar derecho alguno a favor de la sociedad, pues él mismo había acordado delegar en Punta del Mar, Inc. la facultad para representar a la sociedad especial.
Recordemos lo obvio: el contrato de sociedad es el que marca el nacimiento de este modo de organización, creando una personalidad jurídica distinta a la de los socios que la componen y donde, a su vez, se pautan los derechos y las obligaciones de ésta por voluntad expresa de las partes que conforman la sociedad. Ahora bien, independientemente de si los socios de una sociedad especial tienen o no personalidad jurídica separada de la sociedad misma, los términos del contrato de sociedad en este caso —la ley entre las partes— le confiere, en exclusiva, la facultad representativa de la sociedad especial a Punta del Mar, Inc. como socio especial administrador. El señor Quiñones no estaba facultado para acudir al Registro de la Propiedad y, en nombre de la sociedad especial y sin autorización judicial, gravar -un inmueble que le perteneciera a ésta; mucho me-nos, cuando se trata de un inmueble cuyo titular registral es un tercero, tal y como ocurre en este caso. Véase J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., España, Ed. Bosch, 1982, T. II, Vol. 2, págs. 510-511.
La decisión que emitió una exigua mayoría de este Tribunal no tan sólo es contraria a las normas establecidas sobre la naturaleza de la personalidad jurídica de una sociedad especial respecto de sus miembros —como indicamos en nuestra opinión disidente— sino que, y en abstracción de este fundamento, también es contraria al contrato mismo de constitución de sociedad pactado por los socios. Toda vez que el dictamen del Tribunal se emite no obstante el contenido de ese contrato, hay que preguntarse, necesariamente, ¿qué valor habrán de tener, de ahora en adelante, las facultades y limitaciones que los socios le confieren al socio administrador en la escritura de constitución *5 de una sociedad especial? La mayoría no parece haber ponderado cómo su dictamen va a afectar en lo sucesivo el acontecer diario de las sociedades especiales. A nuestro juicio, la posición asumida por la mayoría le resta eficacia a la figura de la sociedad especial, derrotando lo que fue la intención legislativa al regularla.
Por otro lado, dado el dictamen del Tribunal, hay que plantearse, como correctamente nos señala el Registrador de la Propiedad en su bien fundamentada moción de reconsideración, esta otra interrogante:
La opinión de este Honorable Tribunal tampoco es clara en cuanto a la capacidad plena o compartida de la Sociedad Especial ya que admite como demandante a uno de los socios, sin embargo, las propiedades en el Registro están inscritas a nombre de la Sociedad Especial y no de los socios. La personalidad jurídica que hasta el presente se le ha reconocido a las Sociedades Especiales, hoy[,] aplicando lo resuelto por el caso de epígrafe, tenemos que concluir se asemeja, si no es igual, [a la] Sociedad Legal de Gananciales, donde la personalidad jurídica requiere la concurrencia de cada uno de los socios por sí y como Sociedad Legal de Gananciales. De faltar cualquiera de éstos, la personalidad jurídica estaría viciada.
Esta es sólo una de las múltiples interrogantes que genera la desafortunada postura adoptada por la mayoría.
Esta anotación ex parte, a la usanza de la desterrada y desprestigiada figura del lis pendens, constituye “un gravamen interino” sobre la finca perteneciente a Beach Village III, limitativa de su derecho de propiedad, que se ha interpuesto sin que se le haya brindado a esa parte la oportunidad de ser escuchada o sin la previa prestación de una fianza para responder por los daños que la anotación le pueda causar como titular registral. Véanse: Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664, 679 (1989); Rocafort v. Álvarez, 112 D.P.R. 563, 566 (1982). Esto choca con las más elementales exigencias de debido proceso de ley.
Este curso de acción no tan sólo afecta los derechos propietarios de una parte que no ha tenido oportunidad de *6 expresarse sino que, como indica el Registrador de la Propiedad, “habrá de afectar adversamente las futuras transacciones inmobiliarias y el financiamiento de éstas, perjudicando a[ú]n más la ya maltrecha actividad económica de nuestro País. Para los Registradores, la opinión ... trastoca [;negativamente] el tráfico jurídico”. (Enfasis en el original.)
Cabe añadir que el señor Quiñones no carece de alternativas. Éste puede, como socio especial, cuestionar las actuaciones del socio administrador y tratar de recuperar para la sociedad especial un inmueble que a su juicio ha sido ilegalmente transferido a un tercero, en un pleito; tal y como lo ha hecho, dicho sea de paso. Lo que no puede hacer es lo que ha hecho, que sin mediar intervención judicial ha acudido al Registro de la Propiedad a anotar preventivamente su demanda, gravando así el inmueble objeto de discordia. Lo único que él tenía que hacer era solicitar del foro primario la orden correspondiente de anotación preventiva dirigida al Registrador de la Propiedad.
Unas consideraciones finales. Como el más Alto Foro de este país, al resolver una controversia debemos ser conscientes del efecto que la norma que se establece habrá de tener, no meramente sobre los litigantes que se encuentran ante nosotros, sino también sobre la sociedad en general. Tenemos una responsabilidad indelegable de pautar el Derecho y hacerlo sin crear disloques sociales y económicos por no sopesar adecuadamente las evidentes repercusiones que nuestros dictámenes han de generar. Que una solución se revele simpática para un caso en particular no es razón suficiente para establecer una nueva norma, pues como vemos en este caso, ello incide de forma negativa e injustificada sobre el tráfico económico del país.
Toda vez que la mayoría del Tribunal se niega a rectificar su posición y ni siquiera permite la intervención de la parte afectada por los resultados de su decisión, no nos queda otra alternativa que no sea disentir.